# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

W.H., a minor,   by his parents and next friends,
Helen and Edmund Haislmaier,
10 4th Street, SE ,
Washington, D.C. 20003,

and

HELEN AND EDMUND HAISLMAEIR,
10 4th Street, SE ,
Washington, D.C. 20003,

     Plaintiffs,

     v.

DISTRICT OF COLUMBIA,
A Municipal Corporation,
One Judiciary Square,
441 Fourth Street, NW,
Washington, D.C. 20001,

and

CLIFFORD B. JANEY, ED.D, (officially as)
Superintendent,
District of Columbia Public Schools,
825 North Capitol Street, NE,
Washington, D.C. 20002,

     Defendants.

Civil Action No. _____

## COMPLAINT
(For Declaratory and Injunctive Relief)

After exhausting all administrative avenues, plaintiffs W.H. and his parents, Helen and

Edmund Haislmaier, turn to this Court for the Free and Appropriate Education ("FAPE") to

which W.H. is entitled under the Individuals with Disabilities Education Improvement Act

("IDEA"), 20 U.S.C. § 1400 *et seq*.  The Haislmaiers first sought assistance from District of

Columbia Public Schools ("DCPS") with W.H.'s education in December 2004, but by August 2006, DCPS still had not provided W.H. with an Individualized Education Plan ("IEP") designed to meet his specific needs or with an appropriate educational placement.  Then after a two-day hearing, an Impartial Hearing Officer ("IHO") ruled that the DCPS failures over time resulted in a denial of FAPE to W.H., and that The Kingsbury Day School ("Kingsbury") is a proper placement for him.  However, before ordering DCPS to place and fund W.H. at Kingsbury, the IHO gave DCPS one last chance to do the right things by convening a Multi-Disciplinary Team ("MDT") meeting within ten days to consider any alternative appropriate placements for W.H..

The deadline passed on February 19, 2007, without DCPS even attempting to hold the required meeting.  Now, and despite several letters, emails and phone calls, the Student Hearing Office and the IHO have yet to issue the Order placing W.H. at Kingsbury.  Instead, the Student Hearing Office offered the Haislmaiers another hearing, supposedly expedited, for March 13, 2007 – three weeks *after* the Haislmaiers alerted the IHO about the DCPS failure to hold the required meeting and six weeks after the issuance of the IHO's Decision.  As a result, W.H. continues to languish in an inappropriate placement where he is not making educational progress.

Because the Haislmaiers met their burden of proof at the administrative level, yet still have not received an Order placing W.H. at Kingsbury,  they must turn to this Court for assistance.  The Haislmaier family respectfully requests that this Court issue a declaratory judgment that the relief being offered by the Student Hearing Office is inappropriate and an injunction ordering W.H. to be placed and funded at Kingsbury without further delay.

2

**Jurisdiction**

1.    This Court has jurisdiction over this matter pursuant to the IDEA; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; 42 U.S.C. §§ 1983 ("Section 1983") and 1988 ("Section 1988"); and 28 U.S.C. §§ 1331 and 1343.  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.  Furthermore, as is addressed in a motion for interlocutory relief, accompanying this Complaint, plaintiffs respectfully request that this Court issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

**Parties**

2.    Plaintiff W.H. is a disabled child eligible for special education and related services from defendants pursuant to the IDEA.  His parents Helen and Edmund Haislmaier bring this action on W.H.'s behalf and in their own right.

3.    At all times relevant to this complaint, plaintiffs were residents of the District of Columbia.

4.    The District of Columbia is a municipal corporation that receives federal financial assistance under the IDEA and other statutes, and is required to comply with the IDEA and Section 504.

5.    Clifford B. Janey is the Superintendent of DCPS, and as such, is the public official charged with the responsibility for ensuring that DCPS complies with federal law as to the education of disabled children.  He ensures that all disabled children in the District of Columbia receive a FAPE and that their rights to equal protection of the law and due process of law are respected.  He is sued in his official capacity.

6.    Under federal and District of Columbia law, the legal responsibility for ensuring

3

compliance with the due process protections of the IDEA rests solely with the District of

Columbia Public Schools.  DCPS has established a division to handle due process hearings,

called the Student Hearing Office.  However, defendants are now operating the Student Hearing

Office as an adjunct to the DCPS General Counsel's Office; it is not an independent entity, but is

interconnected with the school system attorneys.

## Factual Allegations

### Background

7.      W.H. is an eight-year-old student enrolled at St. Peter's Interparish Parochial

School ("St. Peter's"), who has been diagnosed with Absence Epilepsy (a seizure disorder,

formerly termed "Petit Mal") and has multiple learning disabilities, including concerns in the

areas of attention, executive function, aggressive outbursts and oppositional behavior.  IHO's

Decision ("HOD") (attached hereto as Exhibit A), Findings of Fact Number ("Fact") 1.[1]

8.      The District of Columbia Public Schools ("DCPS") has identified W.H. as a

student eligible for special education and related services under the Individuals with Disabilities

Education Improvement Act ("IDEA") with a disability classification of Multiple Disabilities

including classifications of learning disabled (LD) and other health impaired (OHI).  Fact 2.

9.      Since December 2004, W.H.'s parents have been supporting W.H. on their own,

with private tutoring twice a week and occupational therapy ("OT") once or twice a week.  Fact

20.

### April 2005 IEP

---

[1]      Impartial Hearing Officer Coles Ruff decided the administrative case, in *W.H. v. District of Columbia Public Schools*, (February 5, 2007).  Citations to this determination will hereafter appear as "HOD at __" or, as it relates to his findings of fact, "Fact __".

10.     Two years ago, in December 2004, the Haislmaiers approached DCPS to request that the school system determine whether W.H. qualified for IDEA services, and if so, to offer him an appropriate educational program and placement. Fact 3. The Haislmaiers provided several independent evaluations for DCPS to consider.  Fact 3.

11.      On April 21, 2005, DCPS convened an IEP team, determined that W.H. met the criteria for an eligibility code of Learning Disability, developed an IEP for him, and proposed to implement that IEP at Brent Elementary School ("Brent ES"), his neighborhood school.  Facts 10, 1.

12.     The IEP prescribed 5 hours of specialized instruction in a combination of general education and special education settings.  Fact 11.

13.     The IEP reflected that the team was aware of W.H.'s needs in the area of Motor Skills, and that W.H.'s parents were providing him with occupational therapy at their own expense.  Yet, the IEP lacked any consideration of DCPS providing occupational therapy; instead, the IEP simply calls for 45 minutes of "OT consultation" a week without any direct services.  Facts 7, 11.

14.     When the IEP was completed on April 21, 2005, W.H.'s parents decided it was not beneficial to move him to a new school for the mere weeks remaining in the school year. Fact 12.  W.H. remained at St. Peter's, and the IEP expired in April 2006.

### June 2006 IEP

15.     On May 22, 2006, DCPS reconvened a team to conduct the annual review of W.H.'s IEP.  Fact 17.  In the year between meetings, additional evaluations of W.H. had been conducted both by DCPS and by independent evaluators.  Facts 13-16.  At least one such report stressed the need for a full-time special education placement for W.H..  Fact 16.

5

16.     The May 22, 2006 team decided that additional evaluations were necessary and suspended the meeting.  Fact 17.

17.     The team reconvened on June 5, 2006 to consider the results of the new evaluations.  Facts 18-21.  At that meeting, the team agreed that W.H. remained eligible for special education services as a student with Multiple Disabilities ("Specific Learning Disability" and "Other Health Impairment") and developed a new IEP for him.  Fact 22.

18.     The June, 2006 DCPS IEP offered W.H. 11.5 hours of special education, all out of the mainstream setting, as follows: 10 hours per week of specialized instruction, 1 hour per week of occupational therapy, and 30 minutes per week of counseling.  DCPS proposed to implement the 2006-07 IEP at Brent ES or at Watkins ES.  Facts 22-23.

19.     The DCPS proposed IEP was neither appropriate nor sufficient to meet W.H.'s needs.  Fact 30.

20.     The DCPS IEP called for W.H. to spend 65% of his time in general education classes.  This amount of time allotted for specialized instruction was insufficient even to address the multiple goals and objectives that DCPS identified – in the academic areas of reading, written expression and math – much less to address all of the goals and objectives that DCPS omitted.  Facts 29, 31.

21.     W.H. has been having increasing difficulty in the general education setting at St. Peters, thus demonstrating that he requires more support, more structure, and a smaller class size and student:teacher ratio than was available in the general education setting.  Facts 28-29.

***Due Process Hearing***

22.     On August 21, 2006, the Haislmaiers filed a Due Process Complaint Notice

against DCPS.

23.     The Haislmaiers requested that the IHO order W.H. placed at The Kingsbury Day School, a full-time special education school where he could receive all of the educational supports he requires, with integrated related services as necessary.  Facts 32-33.

24.     A hearing was held on December 13, 2006 and January 22, 2007.  The IHO issued his Opinion on February 5, 2007.

25.     The IHO found that DCPS had failed to provide W.H. with an IEP designed to meet his specific needs and failed to provide W.H. with an appropriate placement for the 2006-2007 school year, either of which constitute a denial of FAPE.  HOD at 9-11.

26.     The IHO stated that "after a formal presentation of the independent evaluations in the hearing by a principal evaluator and classroom observations by Ms. Davis, the IHO is convinced that the unique needs of this student warrant and [*sic*] full time special education placement."  HOD at 10.

27.     The IHO determined that Kingsbury Day School is a proper placement for W.H..  HOD at 10.

28.     Despite the findings that DCPS denied W.H. a FAPE and that the placement proposed by the parents is proper, the IHO gave DCPS one more chance to find an appropriate placement for W.H. through the MDT meeting process.  DCPS was ordered, *inter alia*, to:

> within ten (10) school days of the issuance of this Order, convene a multi-disciplinary team/ individualized education program (MDT/IEP) meeting to review the student's evaluation, review and revise the student's IEP to consider the appropriateness of a full time special education placement, discuss and determine placement and to allow the parent and the student's independent evaluators to provide relevant data and be members of the MDT.  DCPS shall fully consider the placement option proposed by the parent.

HOD at 11-12.

29.    The parents were authorized, if DCPS did not "promptly comply" with the Order, to "immediately petition the DCPS Student Hearing Office for an expedited hearing and relief." HOD at 12.

### The DCPS Failure to Comply with IHO's Decision

30.    DCPS did not convene, or even attempt to convene, the MDT meeting by the February 19, 2007 deadline as required by the IHO's Decision.

### Lack of Available Remedy for W.H. Haislmaier

31.    As a result of the DCPS noncompliance, the Haislmaiers, through counsel, contacted the IHO on February 22, 2007,[2] alerting him of the DCPS failure and requesting that he issue an Order providing the requested relief, placement and funding at Kingsbury Day School. The Haislmaiers agreed to attend an expedited hearing if necessary, but pointed out that such an additional hearing was unnecessary because the IHO already had found sufficient evidence of the denial of FAPE and the propriety of placement at Kingsbury.

32.    The day after receiving a copy of that letter, DCPS sent the Haislmaiers an invitation to attend an MDT meeting on March 2, 5, or 7, 2007.  None of these proposed dates comply with the IHO's Decision.

33.    After receiving no response from the IHO by February 26, 2007, and acknowledging the IHO's findings that time was of the essence, the Haislmaiers again wrote to the IHO requesting that he issue a Decision or schedule a teleconference that day.

_____

[2]    Even though the deadline passed officially on February 19, 2007, the Haislmaiers allowed DCPS extra time to schedule the MDT meeting because the school system was shut down due to weather for three days during that time period.  Even with the extra days, DCPS did not attempt to meet the IHO's deadline.

34.    The Haislmaiers were informed that the IHO would not be in that day, and followed up with an email requesting a teleconference.  The IHO responded that he would schedule both a teleconference and an expedited hearing.

35.    The Student Hearing Office subsequently scheduled a new hearing for March 13, 2007 – three weeks after the Haislmaiers first notified it of the DCPS failure to hold the required meeting and more than six weeks after the conclusion of the first evidentiary hearing in this matter.  The IHO never conducted the teleconference or issued any form of relief.

### Need for and Propriety of Relief from Federal Courts

36.    Time is of the essence in this case.  W.H. cannot wait an additional two weeks just to participate in another hearing and wait for a new decision.

37.    W.H. cannot enroll at Kingsbury until the IHO so orders.  Kingsbury cannot hold a spot for W.H. Haislmaier indefinitely.  The Haislmaiers are not able to sign a tuition contract in good faith as they are not able to afford the tuition.

38.    In the meantime, W.H. is suffering in his current placement.  Facts 28-29.  The IHO already determined that a general education classroom is not appropriate for W.H., so the longer he spends at St. Peter's the more his education suffers.

39.    Because there are no remaining factual issues, the Haislmaiers should not be asked to bear the needless expense and delay of an additional hearing, nor should the witnesses be asked to set aside the time required to testify.

### COUNT I

40.    Plaintiffs hereby incorporate paragraphs 1 - 39 as if included herein.

41.    Defendants' failure to offer plaintiffs appropriate relief after a finding that DCPS denied the student a FAPE and that the parentally-proposed placement is proper is a deprivation of

plaintiffs' rights in violation of the IDEA and Section 1983.

## COUNT II

42.     Plaintiffs hereby incorporate paragraphs 1 - 39 as if included herein.

43.     Defendants' failure to provide W.H. with a Free and Appropriate Public Education by failing to place and fund him at The Kingsbury Day School after DCPS failed to comply with the IHO's February 5, 2007 Order, is a violation of the IDEA and Section 1983.

### <u>Prayer for Relief</u>

WHEREFORE, plaintiffs respectfully request that this Court:

1.      Issue a judgment for plaintiffs and against defendants;

2.      Issue a declaratory judgment that the relief being offered by the Student Hearing Office pursuant to the IDEA is insufficient;

3.      Issue injunctive relief requiring DCPS to place and fund W.H. at The Kingsbury Day School;

4       Award attorneys' fees and costs for this action to plaintiffs;

5.      Award any other relief that this Court deems just and appropriate.


Respectfully Submitted,


_____/s/_____

Michael J. Eig          #912733
Haylie M. Iseman       #14782
Paula A. Rosenstock  #494580
Michael J. Eig and Associates, P.C.
5454 Wisconsin Avenue,  Suite 760
Chevy Chase, MD 20815
(301) 657-1740

Matthew B. Bogin      #911552
77 South Washington Street
Rockville, Maryland 20850
(301) 251-4410

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Complaint was delivered in person to the Office of the Attorney General for the District of Columbia, counsel for defendants on March 6, 2007.


_____/s/_____
Michael Eig

(In the Matter of WH HOD: February 5, 2007)

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigation Division*
### CONFIDENTIAL
### Coles B. Ruff, Jr., Due Process Hearing Officer

|  |  |  |
|---|---|---|
| In the Matter of William Haislmaier | ) | **IMPARTIAL DUE PROCESS** |
| Date of Birth:  November 23, 1998 | ) | **REVISED** [1] |
| ("Student") | ) | **HEARING OFFICER'S DECISION** |
|  | ) |  |
| Petitioner, | ) | Hearing Dates: December 13, 2006 |
|  | ) | January 22, 2007 |
| v. | ) | Held at: 825 North Capitol St. NE |
|  | ) | Washington, DC |
| District of Columbia Public Schools | ) |  |
| ("DCPS" or "District") | ) |  |
| School: Non-Attending | ) |  |
| Respondent. | ) |  |

Counsel for Student:

Michael J. Eig, Esq.
5454 Wisconsin Ave. #760
Chevy Chase, Maryland  20815

Counsel for DCPS:

Quinne Harris Lindsey, Esq.
Office of General Counsel
825 North Capitol St. NE
Washington, DC  20002

## JURISDICATION:

A Due Process Hearing was convened on December 13, 2006, and concluded January 22, 2007, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a due process complaint submitted by counsel for the student and parent filed August 21, 2006. The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17 and the *Individuals with Disabilities Education Improvement Act of 2004* (I.D.E.I.A.), the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

## DUE PROCESS RIGHTS:

---

[1] This revised HOD is issued to include the provision directing DCPS to conduct an assistive technology evaluation.

1

**EXHIBIT**

*A*

(In the Matter of WH HOD: February 5, 2007)

The parent's counsel waived a formal reading of the due process rights.

## SUMMARY OF THE RELEVANT EVIDENCE:

The Hearing Officer considered the representations made on the record by each counsel, the testimony of the witness(es) and the documents submitted in the parties' disclosures (WH 1-27 and DCPS 1-22) which were admitted into the record.

## FINDINGS OF FACT [2]:

1. The student is currently age eight and has been determined to be eligible for special education and related services with a disability classification of multiple disabilities (MD) with classifications of learning disabled (LD) and other health impaired (OHI). The student's home school is Brent Elementary (Brent). The student, however, attends a private school: St. Peters Inter-Parish (St. Peter's) where he has attended for at least the last two school years. (DCPS-L)

2. Dr. Stephen Mott, a pediatrician at Georgetown University Hospital, has diagnosed the student with Childhood Absence Epilepsy and concerns in the areas of attention, executive function, aggressive outbursts and oppositional behavior. (WH 2)

3. In December 2004 when the student was age six and in the kindergarten at St. Peters, his mother (parent) initiated the eligibility process by contacting the DCPS Central Assessment and Referral and Evaluations (CARE) Center. The parent indicated to DCPS the student's diagnosis and provided independent evaluations. DCPS developed a student evaluation plan (SEP), reviewed the independent evaluations and conducted a psycho-educational evaluation and social history. (DCPS-Q, S)

4. The parent provided DCPS an independent occupational therapy (OT) evaluation conducted in December 2004. The evaluation noted the student had strengths in fine motor coordination and manual dexterity and gross motor skills. The evaluation noted he had "significant difficulty with visual motor interaction (using a pencil to produce shapes and letters) visual motor control (accuracy/control with pencil), self regulation of attention, ocular motor skills (eye movements), trunk stability and balance, handwriting and process and modulation of sensory information." The evaluator recommended the student receive occupational therapy services once per week to address these areas. (WH 11)

---

[2] The evidence that is the source of the finding of fact is noted within a parenthesis following the finding.

5. In March 2005 DCPS psychologist Ms. Janet Burns conducted the psycho-educational evaluation. As a part of her evaluation Ms. Burns reviewed Dr. Mott's report, the student's independent OT evaluation, observed the student at St. Peters and conducted her own assessments.[3]  The assessments indicated the student's intellectual abilities were in the high average range and his academic achievement in Reading and Math in the low average range; his spoken language abilities were in the superior range. (DCPS-V)

6. Ms. Burns noted in her evaluation the student's cognitive functioning was better expressed with the use of oral language and expressive and receptive language skills. She also noted with regard to tasks requiring written expression (visual-motor integration, handwriting, visual scanning and speed accuracy) the student had severe deficits. She concluded that based upon the student's psycho-educational profile and the occupational therapy evaluation the student had learning disabilities in the area of written expression. (DCPS-V)

7. The independent OT evaluation was also reviewed by DCPS occupational therapists, including Ms. Richeelle Harvey. She recommended the student receive 45 minutes of direct OT services weekly. (DCPS-H, N)

8. On March 14, 2005, Ms. Irene Adderley, the DCPS CARE Center case manager, conducted a classroom observation of the student at St. Peter's and spoke with his classroom teacher. Ms. Adderley observed the student was attentive, followed classroom rules and directions and participated in the class activities. She noted he did not show signs of over-activity or aggression, appeared to comprehend directions from the teacher, acted appropriately in the classroom setting and appeared to be learning and retaining information.   (DCPS-J)

9. On April 13, 2005, DCPS made a referral for a neuro-psychological evaluation to be conducted based on the recommendation of the student's physician. (DCPS-M)

10. On April 21, 2005, the multi-discipline team (MDT) convened and determined the student eligible with the LD classification and developed the student's initial individualized educational program (IEP). The parent participated along with St. Peter's principal and the student's classroom teacher at St. Peter's. The DCPS participants included Ms. Janet Burns, DCPS psychologist, and Ms. Vicia Banner the special educator and IEP developer.  (DCPS-L)

11. The initial IEP prescribed 5 hours of specialized instruction and OT consultative services.[4]  The IEP included motor skill goals and academic goals and short term

---

[3] Ms. Burns administered the Wechsler Primary-Preschool Scale of Intelligence-Third edition (WPPSI-III), the Berry-Buktenica Developmental Test of Visual-Motor Integration (VMI) and Young Children's Achievement Test (YCAT).

[4] The IEP also noted the student was receiving OT services outside school at the parent's expense.

objectives. The IEP indicated the student was in need of specialized instruction in reading and handwriting and that his special education services could be provided in a combination general education and special education setting and this "combination setting" was the least restrictive environment (LRE) for the student. The IEP noted the student would benefit from regular education in all other areas due to his academic strengths. (DCPS-L)

12. DCPS was prepared to and offered to implement the student's IEP and provide him special education and related services at his neighborhood school, Brent. However, the parent indicated the student would not be attending Brent at that time. The MDT concluded the student was in need of direct OT services. However, because the parent indicated the student would not attend Brent the IEP reflected only consultative services as DCPS was not allowed by the rules of the Catholic Arch Diocese to provide direct services to the students at St. Peters. Had the student attended Brent he would have been provided direct OT services and the IEP would have reflected those direct services. The parent did not request that the student be allowed to come to Brent to be provided the OT services. (Ms. Adderley's testimony)

13. After the student was determined eligible DCPS conducted a neuropsychological evaluation of the student on May 18, 2005. The evaluator indicated that because of the student's attention deficits he would benefit from small group instruction in basic skills, including writing. It does not appear the evaluation was reviewed by a MDT. (DCPS-K)

14. In February 2006 the parent obtained a developmental cognitive neurology evaluation conducted by Martha Bridege Denckla, M.D. Dr. Denckla recommended the student be given a disability classification of "multiply handicapped" due to the "multiple modules of brain dysfunction he exhibits in addition to having the seizure disorder..." She recommended the student have "the most sophisticated special education program available for the next two years." (DCPS-G)

15. In March and April 2006 Dr. Patricia Papero, a Pediatric Neuro-psychologist, conducted another independent neuropsychological evaluation of the student. She diagnosed the student with Dyslexia, Graphomotor Output Disorder and Attention Deficit Hyperactivity Disorder (ADHD). Dr. Papero indicated the student "works extremely slowly and will have significant difficulty in written output to complete academic tasks." She noted that it is not feasible to mainstream the student in a general education curriculum as he needs a full time special education placement. She believes the student also suffers with a language disorder. (Dr. Papero's testimony, WH 6)

16. Dr. Papero recommended, based on the student's conditions, that he be in an education placement with a low student/teacher ratio, he not be pulled out of a regular education program to resource room but be in a full time special education

placement. She noted "the severity of [the student's] learning disability must not be understated in planning for the level of services…less than a full time special education placement would do harm through negligence in addressing the range and extent of deficiencies that directly affect learning at this stage in his educational development." (WH 6)

17. On May 22, 2006, DCPS convened a MDT meeting at St. Peters to address the parent's concerns that the student was not making sufficient progress at St. Peters. The parent presented DCPS with the independent re-evaluations that had been conducted and the parent requested DCPS conduct a speech language evaluation. DCPS agreed to conduct the speech/language evaluation, review the new independent evaluations and reconvene the MDT meeting. (DCPS-D)

18. On May 26, 2006, DCPS conducted a speech language evaluation which did not recommend the student receive speech language services. (DCPS-C)

19. On May 30, 2006, Ms. Burns conducted a review of the student's updated neuropsychological evaluation, developmental cognitive neurology evaluation, and conducted an academic reevaluation.[5] Ms. Burns had also conducted another observation of the student at St. Peters in February 2006. She concluded that based upon her evaluation and her review of the additional independent evaluations the student continued to meet the criteria for the LD classification and, based on the medical documentation supporting the existence of Attention Deficit and Hyperactivity Disorder (ADHD), warranted a classification of Multiply Handicapped." (DCPS-E)

20. The student has received private occupational therapy (OT) services once per week from Skills on the Hill, LLC since December 2004. Since October 2005 the student has received an additional hour of OT services in the school setting. An independent occupation re-evaluation was conducted in February 2006 which indicated the student had made improvements. The DCPS OT therapist reviewed the re-evaluation and concurred with the recommendation the student continued to need weekly occupational therapy services. (DCPS-H, I)

21. On June 5 2006, DCPS reconvened the MDT to revise the student's IEP based on the updated evaluations that had been conducted. The MDT participants included the parent, Ms. Irene Adderley, the DCPS occupational therapist, Ms. Wanda Banks, Ms. Janet Burns, St. Peter's principal, the student's teacher and Ms. Banner the special educator and IEP developer. (DCPS-D)

22. At the June 5, 2006, MDT meeting the student's disability classification was changed to multiply disabled – LD and other heath impaired (OHI). Each of the DCPS discipline evaluators reported the results of their evaluations and/or

---

[5] Ms. Burns conducted the following assessments: Woodcock Johnson III – Tests of Achievement, Written Expression Scale-Oral and Written Language Scales (OWLS)

reviews of the independent evaluations. The parent expressed views about the student educational abilities. The MDT increased the student's specialized instruction to 10 hours per week and added direct OT services of 1 hour per week and 30 minutes of counseling. The IEP indicated the student would be out of general education 35% of the time. (DCPS-B)

23. DCPS offered Brent as the location where the IEP could be implemented and the student could attend. DCPS also offered Watkins Elementary School. The parent indicated she would visit both locations. There was no request or suggestions made by any of the MDT participants including the parent and the student's teacher that the student be placed in a full time special education placement. (Ms. Adderley's testimony, DCPS-B)

24. On June 8, 2006, a follow up meeting was convened with the parent, Ms. Adderley and the DCPS OT therapist, Ms. Wanda Banks. Ms. Janet Burns participated by telephone. The meeting was for the purpose of discussing additional OT concerns. DCPS agreed to conduct an assistive technology evaluation. Ms. Burns explained the social emotional goals for the student. DCPS also offered to provide the student extended school year (ESY) services for summer 2006 and discussed the student's transportation needs to attend Brent. The parent indicated she would consider the options and make a decision about the transportation and placement. (DCPS-A)

25. On June 8, 2006, DCPS issued a prior notice of placement for the student to be in a combination special education/general education setting located at Brent. (DCPS-A)

26. The parent did not enroll the student at Brent at the start of school year (SY) 2006-07 and continued the student's attendance at St. Peters. The services in the IEP are not being implemented at St. Peters as it is a general education school. The parent's counsel filed the current due process complaint August 21, 2006. (WH 1)

27. Ms. Michele Davis is an educational consultant engaged by the parent during summer 2006 to assist the parent in determining an appropriate placement for the student. Ms. Davis reviewed the student's evaluations and other data and observed the student at St. Peters on September 14, 2006. She spent approximately 45 minutes at St. Peters. She had no conversations with the student's tutor or the special education teacher and has not conducted any formal evaluation of the student. (Ms. Davis' testimony) [6]

---

[6] The parent's counsel sought to have Ms. Davis designated as an expert in special education. The Hearing Officer indicated this designation was too broad for expert designation. However, based on her experience the Hearing Officer agreed to consider her opinion of the appropriateness of the student's IEP and the proposed placement.

28. At St. Peters the student is currently in a classroom with about 25 second graders with a teacher and an aide sitting in quads. It is a general education curriculum. The student currently receives pull out services with a special education teacher/tutor in addition to the classroom instruction. Ms. Davis observed that the student is not a behavior problem and he is trying to be productive and is motivated in the classroom. However, his skills seem to be regressing and he is showing deficiencies in all five areas of reading. (Ms. Davis' testimony

29. During Ms. Davis' observation the student had difficulty paying attention and remaining on task and was preoccupied with objects that did not have to do with the instruction being presented. The student's responses to the teacher were not always understandable and he had difficulties with transitions. As a result her observations, review of the student's evaluations and records and conversations with his evaluators and teacher, Ms. Davis concluded that pull out services were insufficient to meet the student's needs and that he could not be mainstreamed or benefit from services in an inclusion settings due to the severity of disabilities. (Ms. Davis' testimony, WH 4)

30. Ms. Davis also reviewed the IEP developed by DCPS on June 5, 2006. She concluded the IEP was deficient and did not fully address the student's needs. The reading goals are appropriate but there is no base line in the current levels of performance from which a teacher can measure the student's progress relative to his goals and objectives. The impact statement of his strengths is not a match for the goals and objectives that were developed in the IEP. There are no written language goals and objectives mentioned in the IEP despite the fact the student is greatly impacted by his disability in the area of written expression. There was also is no indication the student's executive functioning concerns are addressed. There are no supplementary aides in the IEP other than testing. (Ms. Davis' testimony)

31. Ms. Davis observed Brent and the program proposed by DCPS for the student. She visited the second grade classroom which had 18 students and one teacher. Brent has only has one special educator with 12 special education students ranging in grades from Pre-K to 6th grade. The special education services are delivered in an inclusion method with the special education teacher coming into the general education classroom to assist students. The special education teacher pulls special education students out for small group work on an "as needed" basis. Ms. Davis concluded that the inclusion method used at Brent was inappropriate for the student and would even be detrimental to the student given the severity of his disabilities and the recommendations of his independent evaluators. (WH 5, Ms. Davis' testimony)

32. The student has been accepted by Kingsbury Day School (KDS). KDS is a full time special education placement with a total of 80 students in 11 classrooms in its lower school, which is being offered to the student. The classrooms average two adults to every four children. The instruction is individualized to meet the

(in the Matter of WH HOD: February 5, 2007)

student's needs and the curriculum is integrated to experience the content areas through a variety of venues. The reading and writing methodologies are used to meet the student's needs. There are related service providers and the services are integrated in the classroom. The lower school has two program based counselors who provide consultative support to the classroom teachers and provide services to the students. There are two full time reading specialists assigned to the lower school who develop reading profiles and provide consultative services to the students. (Ms. Gustafson's testimony)

33. KDS can provide the student education, accommodations, and services that are recommended in his evaluations. A classroom has been identified for the student with a certified special education teacher and aide. KDS believes the student would require intensive intervention for three or four years then moving into a less restrictive or general education program. (Ms. Gustafson's testimony)

**ISSUE(S):** [7]

Did DCPS deny the student FAPE by:

1. Failing to evaluate the student in all areas of suspected disability? The parent alleges DCPS should have conducted an assistive technology evaluation in April 2005 prior the student's first IEP being developed. [8]

2. Failing to provide the student an appropriate IEP? The parent alleges the student's June 5, 2006, IEP is inappropriate because (a) it was not based on the recommendations made in the independent evaluations the parent provided, (b) the present levels of performance in the IEP are inadequate, and (c) the services prescribed are inadequate and the goals and objectives are inadequate.

3. Failing to provide the student an appropriate placement for SY 2006-07? The parent alleges Brent is an inappropriate placement for the student.

4. Failing to provide the student related services, specifically direct occupational therapy services from September 2005? [9]

---

[7] The alleged violation(s) and/or issue(s) raised in the complaint may or may/not directly correspond to the issue(s) outlined here. However, the issue(s) listed here were reviewed during the hearing and clarified and agreed to by the parties as the issue(s) to be adjudicated.

[8] The parent's counsel initially alleged DCPS did not conduct an OT evaluation. However, the parent presented an independent OT evaluation in 2005. The Hearing Officer indicated on the record that there is no claim by the parent the OT evaluations are insufficient; rather, the parent was asserting DCPS did not consider the independent evaluations in developing the IEP.

[9] The parent's counsel alleged DCPS should have provided the student equitable OT services although the parent chose for the student to not attend a DCPS public school after he was found eligible.

## CONCLUSIONS OF LAW:

Pursuant to IDEIA Sec. 1415 (f)(3)(E)(i) a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education (FAPE).

Pursuant to IDEIA § 1415 (f)(3)(E)(ii) in matters alleging a procedural violation a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to FAPE, significantly impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE, or caused the child a deprivation of educational benefits.

Pursuant to 5 DCMR 3030.3 the burden of proof is the responsibility of the party seeking relief.[10] In this case the parent is seeking relief and has the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.[11]

1. Did DCPS deny the student FAPE by failing to evaluate the student in all areas of suspected disability?   Conclusion: The parent's counsel did not sustain the burden proof.

There was evidence that DCPS agreed to conduct an assistive technology evaluation at the June 8, 2006, MDT meeting.   Although the parent alleges DCPS should have conducted an assistive technology evaluation in April 2005 prior the student's first IEP being developed, there was no evidence that evaluation was suggested or requested prior to that meeting.   There was nothing presented to indicate that the evaluation has been conducted.   However, there was also no evidence that DCPS in not yet conducting this evaluation has impeded the student's right to FAPE or caused the student a deprivation of educational benefits.   However, the Hearing Officer directs in the Order below that DCPS, with the parent's consent, conduct the evaluation.

2. Did DCPS deny the student FAPE by failing to provide the student an appropriate IEP? Conclusion: The parent's counsel sustained the burden of proof.

---

[10] Based solely upon the evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

[11] The parent's counsel asserted an identical complaint was filed July 25, 2006, and because of a delay in scheduling a new hearing date after a request for continuance, he withdrew the initial complaint and re-filed the complaint on August 21, 2006. The Hearing Officer concluded that despite the fact that the complaints may have been identical because the current complaint was filed after the burden of proof provision was amended the burden of proof in this adjudication is upon the parent.

There was sufficient evidence presented that the IEP developed did not fully incorporate the recommendations made in the independent evaluations the parent provided, particularly with regard for the need for the student to be in a full time special education placement. In addition, the IEP does not contain sufficient present levels of performance from which a baseline of performance can be determined to measure the student's progress relative to his goals and objectives. Therefore, the Hearing Officer concludes the latest IEP developed does not fully address the student needs and is inappropriate.

3. Did DCPS deny the student FAPE by failing to provide the student an appropriate placement for SY 2006-07?  Conclusion: The parent's counsel sustained the burden of proof.

There was sufficient evidence based on the student's independent evaluations and the testimony of Dr. Papero and Ms. Davis that the student is in need of a full time special education placement and that services provided to the student in an inclusion method as would be provided to him at Brent would be detrimental.

The parent has proposed the student be placed at KDS and there is sufficient evidence KDS can provide the student educational benefit.  However, the Hearing Officer notes that although the student's independent evaluations indicated the severity of the student's deficits and that he was in need of a full time special education placement when the student IEP was developed on June 5, 2006, there was no member of the MDT who asserted the student was in need of a full time placement.

The Hearing Officer notes the MDT meeting was held and St. Peters and the student's teacher participated in the meeting.  There is no indication that parent or the St. Peters staff disagreed at that meeting with the determination that the student could continue to receive services as he was then being provided at St. Stephens.

The Hearing Officer takes administrative notice that a MDT does not always follow the recommendations in an evaluation particularly when the evaluators making those recommendations are not members of the MDT and the MDT members consider other variables related to the student's educational performance and needs.  It was not unreasonable at the time of the MDT meeting for DCPS to conclude the student could remain in the a similar inclusion setting as the student had been in for the past two years, particularly when there was no member of the team advocating for any other type of services and/or placement.

Now after a formal presentation of the independent evaluations in the hearing by a principal evaluator and classroom observations by Ms. Davis, the Hearing Officer is convinced that the unique needs of this student warrant and full time special education placement.

Pursuant to DC Code § 38-2501(c) DCPS is required to consider the placement options for a student in the following order (1) DCPS schools or District of Columbia public

charter schools; (2) Private or residential District of Columbia facilities; and (3) Facilities outside of the District of Columbia.[12]

Given that the student is in need of a full time special education placement DCPS should be given the opportunity to comply with that provision and consider and/or offer a full time public education placement and to consider the placement proposed by the parent. The Hearing Officer concludes DCPS has not been given a full opportunity to do so.

Therefore, rather than at this juncture place the student at KDS the Hearing Officer will direct DCPS to immediately convene a MDT/IEP placement meeting to amend the student's IEP to reflect the need of a full time special education placement, for the parent to be able to present the full cadre of individuals familiar with the needs of the student and determine an appropriate placement for the student as he has yet to have a full time IEP. Just as the independent evaluators and consultants participated in the hearing they could presumably participate in a MDT/IEP/Placement meeting.

The Hearing Officer is mindful that the KDS placement may not be available long and it is imperative that the student be offered an appropriate placement promptly. If DCPS does not promptly comply with this Order or if the parent is not satisfied with the placement offered the parent may request an expedited hearing to challenge the placement offered or any other procedural and/or substantive violation.

4. Did DCPS deny the student FAPE by failing to provide the student related services, specifically direct occupational therapy services from September 2005? Conclusion: The parent's counsel did not sustain the burden of proof. I

Ms. Adderley credibly testified that DCPS agreed the student was in need of direct OT services and would have provided those services had the student attended Brent after the student was determined eligible. It appears the parent requested the student be provided services at St. Peters but Ms. Adderley indicated those services could not be provided to the student at St. Peters because of the restrictions imposed by St. Peters. There was no evidence to refute this testimony.

**ORDER:**

1. DCPS shall, within ten (10) school days of the issuance of this Order, convene a multi-disciplinary team/individualized educational program (MDT/IEP) meeting to review the student's evaluations, review and revise the student's IEP to consider the appropriateness of a full time special education placement, discuss and determine placement and to allow the parent and the student's independent

---

[12] D.C. Code § 38-2501 (2003): (c) Special education placements shall be made in the following order of priority provided that the placement is appropriate for the student:
  (1) DCPS schools or District of Columbia public charter schools;
  (2) Private or residential District of Columbia facilities; and
  (3) Facilities outside of the District of Columbia.

FEB-05-2007 10:21 PM

(In the Matter of WH HOD: February 5, 2007)

evaluators to provide relevant data and be members of the MDT. DCPS shall fully consider the placement option proposed by the parent.

2. DCPS shall issue a prior notice of placement within five (5) school days of the MDT/IEP meeting if the recommended placement is public and thirty (30) calendar days if the recommended placement is private.

3. DCPS shall, within, thirty (30) days of the issuance of this Order, and with the parent's consent, conduct an assistive technology evaluation of the student.

4. Scheduling of the MDT/IEP meeting is to be arranged through parent's counsel.

5. DCPS will be given a day for a day extension of any of the prescribed time frames in this Order for any delay caused by the student, the parent and/or their representative(s).

6. If DCPS does not promptly comply with this Order the parent may immediately petition the DCPS Student Hearing Office for an expedited hearing and relief.

**APPEAL PROCESS:**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

_____
Coles B. Ruff, Esq.
Hearing Officer
Date: February 5, 2007

Issued: 02/06/07

12

(In the Matter of WH HOD: February 5, 2007)

## In the MATTER OF William Haislmaier V. DCPS

### INDEX OF EXHIBITS

| EXHIBIT # | IDENTIFICATION | ADMITTED |
|---|---|---|
| WH 1-27 | Parent's Disclosures | Yes |
| DCPS 1-22 | DCPS Disclosures | Yes |
| | | |
| | | |
| | | |
| | | |
| | * A detailed list of the documents disclosed is contained in the parties' disclosure notices | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

13

(In the Matter of WH HOD: February 5, 2007)

# In the MATTER OF William Haislmaier V. DCPS

## RECORD OF PROCEEDING

| DATE | DESCRIPTION |
|---|---|
| 8/21/06 | Request for Due Process |
|  | Notice of Pre-Hearing Conference (as applicable) |
| 9/25/06 | Notice of Due Process Hearing |
|  | SETS Disposition Form |
|  | Transcripts or audio tapes of hearing |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

(In the Matter of WH HOD: February 5, 2007)

| | |
|---|---|
| | |
| | |
| | |
| | |

# INDEX OF NAMES

## In the MATTER OF William Haislmaier V. DCPS

| | |
|---|---|
| Assistant Superintendent, Special Education (or Director) | |
| Special Education Coordinator | |
| DCPS School Psychologist | Ms. Janet R. Burns |
| Regular Education Teacher | |
| DCPS Case Manager | Ms. Irene Adderley |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| Child and Child's DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vs. child's name) | |
| Child's Parent(s) (specific relationship) | Ms. Helen C. Haislmaier (Mother) Mr. Edmond F. Haslmaier (Father) |
| Child/Parent's Representative | Michael J. Eig, Esq. |
| School System's Representative | Quinne Harris Lindsey, Esq. |
| Parent's Educational Consultant | Ms. Michelle R. Davis |
| | Ms. Jody Thoney |
| Kingsbury Day School | Ms. Marlene Gustafson |
| Private Psychologist | Dr. Patricia Papero |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

(In the Matter of WH HOD: February 5, 2007)