## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

W.H., *et al.*,

     Plaintiffs,

     v.

DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

**Civil Action No. _____**

## MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, plaintiffs Helen and

Edmund Haislmaier, as parents and next friend of W.H., respectfully request that this Court issue

a temporary restraining order requiring defendants to place and fund their son, W.H., at the

Kingsbury Day School, the remedy originally sought through due process hearing conducted

through defendants.   The grounds for this motion appear in the accompanying memorandum of

points and authorities and exhibits.

WHEREFORE, plaintiffs respectfully request that this motion be granted.


     Respectfully submitted,


     _____/s/_____
     Michael J. Eig     #912733
     Haylie M. Iseman   #14782
     Paula A. Rosenstock  #494580
     Michael J. Eig and Associates, P.C.
     5454 Wisconsin Avenue
     Suite 760
     Chevy Chase, MD 20815
     (301) 657-1740

Matthew B. Bogin      #911552
77 South Washington Street
Rockville, Maryland 20850
(301) 251-4410

Counsel for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Here, injunctive relief is necessary to prevent irreparable injury to a disabled child and to protect his right to a free appropriate public education ("FAPE")[1] under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*  After a two-day evidentiary hearing under the IDEA, an impartial Hearing Officer ("IHO") decided that the District of Columbia Public Schools ("DCPS" or "the school system") has failed to offer W.H. a FAPE by failing to draft an IEP specific to his needs **and** failing to offer an appropriate placement.  The IHO also found that the Kingsbury Day School ("Kingsbury") is a proper placement for W.H..  Despite the findings of failure by DCPS, the IHO gave DCPS an additional opportunity to find an appropriate placement for W.H. by holding a Multi-Disciplinary Team ("MDT") meeting within ten school days of the decision.  DCPS failed to hold the MDT meeting, or even attempt to hold the meeting, within ten school days thereby missing the deadline, yet the IHO has yet to issue an order placing W.H. at Kingsbury.  Instead, the Student Hearing Office scheduled another hearing on this matter for March 13, 2007 – three weeks after the Haislmaiers first alerted the IHO to the missed deadline and more than six weeks after the conclusion of the first evidentiary hearing in this matter.

As set forth below and recognized in the IHO's Decision, time is of the essence in this case.  W.H. cannot wait an additional two weeks just to have another hearing – despite the fact

---

[1]    A FAPE is defined as "special education and related services that – (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary, or secondary school education in the State involved;  and (D) are provided in conformity with the individualized education program . . . ." 20 U.S.C. §1401(9); *see also*, 34 C.F.R. § 300.17.

3

that there are no factual disputes outstanding – and then wait for a new decision or further pointless delay in his education. His current placement is inappropriate and Kingsbury cannot continue to hold his spot. As such, plaintiffs are asking this Court for injunctive relief, an Order requiring DCPS to place and fund W.H. at Kingsbury without further delay.[2]

## I.    FACTUAL BACKGROUND[3]

W.H. is an eight-year-old student enrolled at St. Peter's Interparish Parochial School ("St. Peter's"), who has been diagnosed with Absence Epilepsy (a seizure disorder, formerly termed "Petit Mal"), as well as multiple learning disabilities, including concerns in the areas of attention, executive function, aggressive outbursts and oppositional behavior. IHO's Decision ("HOD") (attached as Exhibit 1), Findings of Fact Number ("Fact") 1. DCPS has identified W.H. as a student eligible for special education and related services under the IDEA with a disability classification of Multiple Disabilities, with classifications of learning disabled ("LD") and Other Health Impaired ("OHI"). Fact 2.

The Haislmaiers first approached DCPS for special education assistance for their son in December 2004. Fact 3. After a series of evaluations and an MDT meeting, in April 2005, DCPS proposed an IEP with limited special education services to be implemented at Brent Elementary School, the Haislmaiers' home school. Facts 10, 1. Because the Haislmaiers did not

---

[2]    Under federal and District of Columbia law, the legal responsibility for ensuring compliance with the due process protections of the IDEA rests solely with the District of Columbia Public Schools. DCPS has established a division to handle due process hearings, called the Student Hearing Office. However, defendants are now operating the Student Hearing Office as an adjunct to the DCPS General Counsel's Office; it is not an independent entity, but is interconnected with the school system attorneys.

[3]    Plaintiffs hereby incorporate the Factual Allegations of the Complaint filed in this action simultaneously with this Motion as if included herein.

believe that the proposed IEP would adequately serve their son, and based on the short time period remaining in the school year, the Haislmaiers chose to leave W.H. at St. Peter's. Fact 12.

That IEP expired in April 2006. In May 2006, and after additional evaluations (Facts 13-16), DCPS reconvened a team to conduct the annual review of W.H.'s IEP. Fact 17. At least one of these new evaluations stressed the need for a full-time special education placement for W.H.. Fact 16. The May 22, 2006 team decided that still more evaluations were necessary and suspended the meeting. Fact 17. The team reconvened on June 5, 2006, with the results of the new evaluations. Facts 18-21. At that meeting, the team agreed that W.H. remains eligible for special education services as a student with Multiple Disabilities ("Specific Learning Disability" and "Other Health Impairment"), and developed a new IEP for him. Fact 22. DCPS proposed to implement the 2006-07 IEP at Brent ES or at Watkins ES. Facts 22-23.

The DCPS IEP is neither appropriate nor sufficient to meet W.H.'s needs. Fact 30. It calls for W.H. to spend 65% of his time in general education classes. The amount of time allotted for specialized instruction is insufficient even to address the multiple goals and objectives that DCPS identified – in the academic areas of reading, written expression and math – much less to address all of the goals and objectives that DCPS omitted. Facts 29, 31. At the same time, W.H. has been having increasing difficulty in the general education setting at St. Peter's, even with support, thus demonstrating that he requires more support, more structure, and a smaller class size and student:teacher ratio than is available in the general education setting. Facts 28-29.

On August 21, 2006, the Haislmaiers filed a Due Process Complaint Notice against DCPS. Attached as Exhibit 2. They requested the IHO to place W.H. at Kingsbury, a full-time

5

special education school where he can receive all of the educational supports he requires, with integrated related services as necessary. Facts 32-33. A hearing was held on December 13, 2006 and January 22, 2007.

The IHO issued his Opinion on February 5, 2007. He found that DCPS failed to provide W.H. with an IEP designed to meet his specific needs **and** failed to provide W.H. with an appropriate placement for the 2006-07 school year, either of which constitute a denial of FAPE. HOD at 9-11. The IHO stated that "after a formal presentation of the independent evaluations in the hearing by a principal evaluator and classroom observations by Ms. Davis, the IHO is convinced that the unique needs of this student warrant and [*sic*] full time special education placement." HOD at 10. The IHO determined that Kingsbury is a proper placement for W.H.. HOD at 10.

Despite the findings that DCPS denied W.H. a FAPE and that the placement proposed by the parents is proper, the IHO independently gave DCPS one more chance to find an appropriate placement for W.H. through the MDT meeting process. DCPS was ordered, *inter alia*, to:

> within ten (10) school days of the issuance of this Order, convene a multi-disciplinary team/ individualized education program (MDT/IEP) meeting to review the student's evaluation, review and revise the student's IEP to consider the appropriateness of a full time special education placement, discuss and determine placement and to allow the parent and the student's independent evaluators to provide relevant data and be members of the MDT. DCPS shall fully consider the placement option proposed by the parent.

HOD at 11-12. The parents were authorized, if DCPS did not "promptly comply" with the Order, to "immediately petition the DCPS Student Hearing Office for an expedited hearing and relief." HOD at 12.

DCPS did not convene the MDT meeting by the February 19, 2007 deadline as required by the IHO's Decision.  In fact, DCPS did not even attempt to contact the Haislmaiers during this critical period.  As a result of the DCPS noncompliance, the Haislmaiers, through counsel, contacted the IHO on February 22, 2007,[4] alerting him of the DCPS failure and requesting that he issue an Order providing the requested relief - placement and funding at Kingsbury.  Letter attached as Exhibit 3.  The Haislmaiers agreed to attend an expedited hearing if necessary, but pointed out that such an additional hearing was unnecessary because the IHO already had ruled on the denial of FAPE and found sufficient evidence of the propriety of placement at Kingsbury. *Id*.

After receiving no response from the IHO by February 26, 2007, and acknowledging the IHO correctly concluded that time was of the essence, the Haislmaiers again wrote to the IHO requesting that he issue an Order or schedule a teleconference that day.  Letter attached Exhibit 4. The Haislmaiers were informed that the IHO would not be in that day, so they followed up with an email requesting an Order or a teleconference.  Attached as Exhibit 5.  The IHO responded that he would schedule both a teleconference and an expedited hearing.  *Id.*

The Student Hearing Office subsequently scheduled a new hearing for March 13, 2007, three weeks after the Haislmaiers first notified it of the DCPS failure to hold the required meeting.  Hearing Notice attached as Exhibit 6.  The IHO never conducted the teleconference.

Time is critical here;  W.H. cannot wait an additional two weeks just to participate in

---

[4]     Even though the deadline passed officially on February 19, 2007, the Haislmaiers allowed DCPS extra time to schedule the MDT meeting because the school system was shut down for three days during that time period.  Even with the extra days, DCPS did not meet the IHO's deadline.

another hearing and wait for a new decision.  W.H. cannot enroll at Kingsbury until the IHO so

orders.  Declaration of Helen Haislmaier ("Haislmaier Decl.") (attached) at ¶ 32.  Kingsbury

cannot hold a spot for W.H. indefinitely.  Declaration of Marlene Gustafson (attached) at ¶7.

The Haislmaiers are not able to sign a tuition contract in good faith as they are not able to afford

the tuition.  Haislmaier Decl. at ¶ 32.  In the meantime, W.H. is suffering in his current

placement.  Facts 28-29; January 2007 letters from St. Peter's to Mr. and Mrs. Haislmaier,

attached as Exhibit 7.  He has been having increasing difficulty in the general education setting at

St. Peter's, confirming that he requires more support, more structure, and a smaller class size and

student:teacher ratio than is available in the general education setting.  Facts 28-29; Exhibit 7.

The IHO already determined that a general education classroom is not appropriate for W.H., so

the longer he spends at St. Peter's the more his education suffers.  Furthermore, because there are

no remaining factual issues, the Haislmaiers should not be asked to bear the expense and

uncertainty of an additional hearing, nor should the witnesses be asked to set aside the time

required to testify.

## II.    PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES.

There exist no further administrative remedies for plaintiff to attempt to exhaust, since

the IHO has made all legal and factual findings necessary to afford the requested relief.  This

Court has many times in IDEA actions considered whether "plaintiff should be prohibited from

pursuing the action because they have failed to exhaust their administrative remedies."  *North v.

District of Columbia Bd. of Educ.*, 471 F. Supp. 136, 141-42, (D.D.C. 1979).  While this Court

may never have been faced with a question of what to do when a IHO refuses to order relief after

making the necessary findings that the school system denied the student a FAPE and that the

parental placement is proper, the *North* Court did consider a scenario in which, "there was no practical opportunity for pursuing and exhausting administrative remedies." *North* 471 F. Supp141 n.8. The Court concluded that, "further pursuit of administrative procedures which had proved fruitless for several months would have entailed [this student's] continued [denial of FAPE]. It may be worth noting in this connection that in the course of plaintiff's efforts to secure action from the defendants, the latter appear to have committed wholesale violations of plaintiff's procedural rights." *Id*. Granting injunctive relief to this student, the *North* Court established that a family need not pursue administrative remedies under the IDEA where they are practically unavailable and are a waste of time and resources for both the school system and the parents. It is tragic indeed that defendants are, if anything, *less* observant of federal law a generation after *North*.

### III.   THE PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF UNDER THE TRADITIONAL TEST FOR INJUNCTIVE RELIEF.

Plaintiff is entitled to injunctive relief to enforce the provisions of the IDEA. In IDEA, "Congress very much meant to strip schools of [their] *unilateral* authority." *Honig v. Doe*, 484 U.S. 305, 323 (1988) (emphasis in the original). Despite their unequivocal legal obligations, defendants have refused to afford this family due process of law, and yet continue to defy the law by denying the requested relief. Plaintiff is clearly entitled to injunctive relief to enforce the provisions of the IDEA, where defendants refuse to do so.

The Haislmaiers meets the traditional standards for injunctive relief as set out in *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841,

843 (D.C. Cir. 1977):

    A.     Has the petitioner made a strong showing that it is likely to prevail on the merits?

    B.     Has the petitioner shown that without such relief it will suffer irreparable injury?

    C.     Would the issuance of the injunction substantially harm other interested parties?

    D.     Wherein lies the public interest?

This Court has applied this reasoning to IDEA-related issues since *North.* 471 F. Supp. at 141-42 (granting an injunction upon plaintiff's demonstration that "he is about to suffer irreparable injury, that he has demonstrated a likelihood of success on the merits of this litigation, and that there is no countervailing burden on injury to either the defendants or the public interest.") Here, based on these standards, the plaintiffs' motion should be granted.

    **A.    The Plaintiff Has Demonstrated a Likelihood of Success on the Merits.**

    The likelihood of success on the merits in this case is very high. W.H. has been found eligible for special education services pursuant to the IDEA. Upon a finding of eligibility, DCPS was required to provide him with an appropriate educational program and placement. 20 U.S.C. §1401(9); *see also*, 34 C.F.R. § 300.17. The IHO has already found that the parents met their burden of proof by showing that DCPS denied this student a FAPE by failing to provide him with an appropriate IEP and placement for the 2006-07 school year. HOD at 10. Furthermore, the IHO has found that Kingsbury can provide W.H. with educational benefit and is therefore a proper placement. HOD at 10. Finally, DCPS failed to take advantage of the final opportunity to remedy its failures that the IHO granted it in his February 2007 decision, which in and of itself constituted an additional denial of FAPE. Because the IHO has already made findings regarding the denial of FAPE and the propriety of Kingsbury, there is no question that plaintiffs are very

likely to succeed on the merits of this case.

Under IDEA and Supreme Court precedent, if (1) the school system does not provide a student with an appropriate educational placement, and (2) the unilateral private placement identified by the parent is proper, then placement at the private school is the correct remedy. Since the IHO has already found that the parents have met their burden of showing both, defendants must now support the unilateral placement. *See Burlington Sch. Comm. v. Massachusetts Dep't of Educ.*, 471 U.S. 359, 370 (1985), and *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993), *aff'g* 950 F.2d 156 (4th Cir. 1991).

**B.     Though Plaintiff Need Not Demonstrate Irreparable Injury, It is Clear that Irreparable Harm Will Occur Absent Injunctive Relief.**

Unlike injunctive relief sought in other types of cases, in an IDEA case, the plaintiff need not meet the standard for a showing of irreparable harm. In *Cox v. Brown*, 498 F. Supp. at 828-29, this Court concluded that depriving a child of one day of an appropriate education is sufficient to find irreparable injury:

> Parents, as guardians of their children and protectors of their emotional, physical, and educational well-being, have the duty, responsibility, and right to demand nothing less than their children receive the fullest measure of education appropriate to their particularized needs, in accordance with the law. . . . [A]bsent injunctive relief, [their children] will suffer the irreparable harm of lacking each day of their young lives an appropriate education.

*Id.* at 829. It is thus axiomatic that, if Congress thought it important enough to pass a statute to protect a disabled child's rights to education, then depriving a child of that right is sufficiently irreparable to warrant injunctive relief.

However, in this case, W.H. is already suffering irreparable harm and will continue to do so if not placed immediately at Kingsbury. Every day that W.H. remains in his general education

11

classroom at St. Peter's is another day that he is denied an appropriate education. The IHO has already found that W.H. requires a full-time special education placement, yet despite this, he remains in a general education classroom day after day where his needs are not being met.  HOD at 10, Exhibit 7.  The parents have secured a placement for W.H. at Kingsbury; however, they are unable to sign a contract with Kingsbury due to their inability to make such a large financial commitment.  Haislmaier Decl.  Finally, Kingsbury is unable to hold W.H.'s space at the school for an undefined amount of time.  *See* Gustafson Decl..  Therefore, W.H. is unable to begin receiving the full-time special education that the IHO recognized he requires.

The school system's lack of acknowledgment of the impact of its failure to offer due process is fundamentally troubling, as it exhibits an apparent indifference to the passage of time in the life of a disabled child.  As the United States District Court for the District of Columbia instructed these school officials a generation ago, considering the significant impact that even a brief loss of services has on a young child:

> [The school system's] delay in considering [this student's] case has been unreasonable; it evinces a gross disregard for the child's welfare and constitutes a violation of her right to a suitable education under *Mills v. Board of Educ.*[, 348 F. Supp. 866 (D.D.C. 1972)], the Education for All Handicapped Children Act [now the IDEA], and the Rehabilitation Act. Any agency whose appointed mission is to provide for the education and welfare of children fails that mission when it loses sight of the fact that, to a young, growing person, time is critical. While a few months in the life of an adult may be insignificant, at the rate at which a child develops and changes, especially one at the onset of biological adolescence with or without special needs like those of our plaintiff, a few months can make a world of difference in the life of that child.  Plaintiffs can be expected to wait no longer for defendants to devote meaningful consideration to the needs of this rare and complex child.

*Foster v. District of Columbia Bd. of Educ.*, EHLR 553:520 (D.D.C. 1982) (citations omitted);

*see also Davis v. District of Columbia Bd. of Ed.*, 522 F. Supp. 1102, 1111 (D.D.C. 1981)

12

(holding, "[T]here is no question that [this student's] entering [her educational program] a month late would be highly inappropriate, and even further disadvantage this handicapped child. A month lost in the life of a child is forever lost, an 'eternity' . . . ."). In W.H.'s case, there is no way to know how long the deprivation and indifference will last, but every additional day that is lost to this student deprives him of the FAPE that is his right.

The United States Supreme Court, in interpreting the IDEA, has consistently stressed the importance of due process rights to ensure that disabled children receive an appropriate education:

> When the elaborate and highly specific procedural safeguards embodied in § 1415 are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance that Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures . . . as it did upon the measurement of the resulting IEP against a substantive standard.

*Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 205-6 (1982). Without an educational agency's attention to and compliance with statutory procedures, no child can be assured of receiving a FAPE. *See also Board of Educ. of Cabell County v. Dienelt*, 843 F.2d 813, 815 (4th Cir. 1988) (holding that, "'Failures to meet the Act's procedural requirements *are adequate grounds by themselves* for holding that a school board failed to provide [the student with] a FAPE.'") (emphasis supplied) (quoting *Hall v. Vance*, 774 F.2d 629, 635 (4th Cir. 1985)); *Hudson v. Wilson*, 828 F.2d 1059,1063 (holding that "procedural noncompliance can itself support a finding that a child has not been provided with a FAPE.") (4th Cir. 1987). The issue now constitutes the most basic of procedural violations: the failure of the IHO to order the appropriate relief after finding a denial of FAPE and determining that the parental placement is

proper.

**C.    There is No Harm to the School System.**

Granting plaintiffs injunctive relief will result in no harm to defendants, since the school system is obligated by law to provide this student with a FAPE, no matter in what arena.  Even if the school system is forced to spend more money than it had planned, this minor harm must be "balanced against . . . the emotional, psychological and physical" damage to this student, which is irreparable.  *L.J. v. Massinga*, 838 F.2d 118 (4th Cir. 1988).  Those crucial factors outweigh any expenditure of funds.

Furthermore, DCPS was given the "gift" of one more chance to find an appropriate placement for W.H. and, if it could find such a full-time, specialized program in the public system, possibly avoid the expense of placing W.H. at Kingsbury.  The IHO gave DCPS ten days to conduct a placement meeting and weigh all alternatives, but DCPS failed to hold the meeting within the required time period.  Therefore, as DCPS has proposed no placement other than Kingsbury, and since the IHO already has ruled on the propriety of that placement, there is no harm to DCPS in following through with the IHO's decision.

**D.    The Public Interest Favors the Granting of Injunctive Relief.**

It is in the public's best interest that the government fulfill its legal obligations to its citizens.  The public interest is always served when governmental officials act in accordance with the law.  Society has judged that all children regardless of disability are entitled to an appropriate education.  Courts agree with this policy rationale:

> The policies underlying the IDEA and its administrative process favor imposing financial responsibility upon the local school district as soon as there has been an administrative panel or judicial decision establishing the pendent placement.

*Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 85 (3[d] Cir. 1996). The requested injunction does nothing more than assure that W.H. receives the special education services to which he is entitled.

### IV.  WHEN A STUDENT HAS BEEN DENIED FAPE, THE FUNDING OF A "PROPER" PARENTAL PLACEMENT IS THE APPROPRIATE RELIEF.

DCPS has failed in its obligation to offer W.H. a FAPE. The Supreme Court has noted that a student is deprived of a FAPE where the school system fails in either one of two identified categories of IDEA compliance: "First, has the [educational agency] complied with the procedures set forth in the Act? And second, is the individualized education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Rowley*, 458 U.S. at 206-7.

The IHO has already found that the school system's failure to provide this student with an appropriate program and placement denied him a FAPE. Further, by failing to comply with the IHO's order to hold an MDT meeting within ten school days of his decision, the school system further denied this student his FAPE. Finally, by not placing W.H. at Kingsbury immediately after receiving notice that DCPS missed the deadline, and instead waiting a week and then scheduling an additional, unnecessary hearing two additional weeks later, the Student Hearing Office caused a further denial of FAPE.

Under established Supreme Court law, the school system's failure to provide W.H. a FAPE leads directly to the determination of whether his parent identified a placement that provides educational benefit. The proper analysis in such an inquiry is found in *Burlington,* 471 U.S. at 369 and *Carter*, 510 U.S. 7:

> In a case where a court determines that a private placement desired by the parents was proper under the Act and that an IEP calling for placement in a public school was inappropriate, it seems clear beyond cavil that "appropriate" relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school.

*Burlington,* 471 U.S. at 370.  Thus, when a public school system has defaulted on its obligations under the Act, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits." *Carter*, 950 F.2d at 163 (quoting *Rowley*, 458 U.S. at 207); *see also, Burlington*, 471 U.S. 359.

By these rulings, the Supreme Court interprets the IDEA to permit a Court to order the local educational agency to place students at the parentally-identified private school when it is determined to be proper.  *Burlington,* 471 U.S. at 370.  There can be no dispute that the placement at Kingsbury is proper for W.H., since the IHO has already made this determination.  HOD at 10.  Therefore, there is nothing left but for DCPS to place and fund W.H. at Kingsbury.

## V.    CONCLUSION.

As demonstrated in this Memorandum, the plaintiffs meet the traditional test for injunctive relief.  Therefore, the Haislmaiers respectfully request that this motion for a Temporary Restraining Order be granted, and that DCPS be ordered to place and fund W.H. at The Kingsbury Day School without further delay.  Plaintiffs therefore respectfully request that this Court issue the requested injunctive relief.

Respectfully Submitted,

_____
      /s/

Michael J. Eig          #912733
Haylie M. Iseman        #14782

16

Paula A. Rosenstock  #494580

Michael J. Eig and Associates, P.C.

5454 Wisconsin Avenue

Suite 760

Chevy Chase, MD 20815

(301) 657-1740


Matthew B. Bogin      #911552

77 South Washington Street

Rockville, Maryland 20850

(301) 251-4410


Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

W.H. *et al.*,

      Plaintiffs,

      v.

DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

Civil Action No. _____

DECLARATION OF HELEN HAISLMAIER:

1.    I am the mother of W.H. ("our son," "the minor child," or "the student"). I make this declaration at the request of and for use by the attorneys representing my family in special education matters for my son. The matters discussed herein are from my personal knowledge.

2.    My son is an eight-year-old student enrolled at St. Peter's Interparish Parochial School ("St. Peter's"), who has been diagnosed with Absence Epilepsy (a seizure disorder, formerly termed "Petit Mal") and has multiple learning disabilities, including concerns in the areas of attention, executive function, aggressive outbursts and oppositional behavior.

3.    The District of Columbia Public Schools ("DCPS") has identified my son as a student eligible for special education and related services under the Individuals with Disabilities Education Improvement Act ("IDEA") with a disability classification of Multiple Disabilities with classifications of learning disabled ("LD") and other health impaired ("OHI").

4.    Since December 2004, his father and I have been supporting our son on our own, with private tutoring twice a week and occupational therapy ("OT") once or twice a week.

5.    Two years ago, in December 2004, his father and I approached DCPS to request that

the school system determine whether our son qualified for IDEA services, and if so, to offer him an appropriate educational program and placement. We provided several independent evaluations for DCPS to consider.

6.    On April 21, 2005, DCPS convened an IEP team, determined that our son met the criteria for an eligibility code of Learning Disability, developed an IEP for him, and proposed to implement this IEP at Brent Elementary School ("Brent ES"), his neighborhood school.

7.    The IEP prescribes 5 hours of specialized instruction in a combination of general education and special education settings.

8.    The IEP reflects that the team was aware of our son's needs in the area of Motor Skills, and that his father and I were providing him with occupational therapy at our own expense. Yet, the IEP lacks any consideration of DCPS providing occupational therapy; instead, the IEP simply calls for 45 minutes of "OT consultation" a week without any direct services.

9.    When the IEP was completed on April 21, 2005, his father and I decided it was not beneficial to move him to a new school for the mere weeks remaining in the school year. Our son remained at St. Peter's, and the IEP expired in April 2006.

10.    On May 22, 2006, DCPS reconvened a team to conduct the annual review of our son's IEP. In the year between meetings, additional evaluations of our son had been conducted both by DCPS and by independent evaluators. At least one such report stressed the need for a full-time special education placement for our son.

11.    The May 22, 2006 team decided that additional evaluations were necessary and suspended the meeting.

12.    The team reconvened on June 5, 2006 with the results of the new evaluations. At

that meeting, the team agreed that our son remains eligible for special education services as a student with Multiple Disabilities ("Specific Learning Disability" and "Other Health Impairment") and developed a new IEP for him.

13.    The June 2006 DCPS IEP offers our son 11.5 hours of special education, all out of the mainstream setting, as follows: 10 hours per week of specialized instruction, 1 hour per week of occupational therapy, and 30 minutes per week of counseling. DCPS proposed to implement the 2006-07 IEP at Brent ES or at Watkins ES.

14.    The DCPS proposed IEP is neither appropriate nor sufficient to meet our son's needs.

15.    The DCPS IEP calls for our son to spend 65% of his time in general education classes. This amount of time allotted for specialized instruction is insufficient even to address the multiple goals and objectives that DCPS identified – in the academic areas of reading, written expression and math – much less to address all of the goals and objectives that DCPS omitted.

16.    Our son has been having increasing difficulty in the general education setting at St. Peters, thus demonstrating that he requires more support, more structure, and a smaller class size and student:teacher ratio than is available in the general education setting.

17.    On August 21, 2006, his father and I filed a Due Process Complaint Notice against DCPS.

18.    His father and I requested that the Hearing Officer order our son placed at The Kingsbury Day School ("Kingsbury"), a full-time special education school where he can receive all of the educational supports he requires, with integrated related services as necessary.

19.    A hearing was held on December 13, 2006 and January 22, 2007. The Hearing

Officer issued his Opinion on February 5, 2007.

20. The Hearing Officer found that DCPS had failed to provide our son with an IEP designed to meet his specific needs and failed to provide him with an appropriate placement for the 2006-2007 school year, both of which constitute a denial of FAPE.

21. The Hearing Officer stated that "after a formal presentation of the independent evaluations in the hearing by a principal evaluator and classroom observations by Ms. Davis, the Hearing Officer is convinced that the unique needs of this student warrant and [sic] full time special education placement."

22. The Hearing Officer determined that Kingsbury is a proper placement for our son.

23. Despite the findings that DCPS denied our son a FAPE and that the placement proposed by the parents is proper, the Hearing Officer gave DCPS one more chance to find an appropriate placement for William through the MDT meeting process. DCPS was ordered, *inter alia*, to: "within ten (10) schools days of the issuance of this Order, convene a multi-disciplinary team/ individualized education program (MDT/IEP) meeting to review the student's evaluation, review and revise the student's IEP to consider the appropriateness of a full time special education placement, discuss and determine placement and to allow the parent and the student's independent evaluators to provide relevant data and be members of the MDT. DCPS shall fully consider the placement option proposed by the parent."

24. The Hearing Officer stated that, if DCPS did not "promptly comply" with the Order, we could "immediately petition the DCPS Student Hearing Office for an expedited hearing and relief."

25. DCPS did not convene the MDT meeting by the February 22, 2007 deadline as

required by the Hearing Officer's Decision.

26.    As a result of the DCPS noncompliance, his father and I, through counsel,

contacted the Hearing Officer on February 22, 2007, alerting him of the DCPS failure and

requesting that he issue an Order providing the requested relief - placement and funding at

Kingsbury.  His father and I agreed to attend an expedited hearing if necessary, but pointed out

that such an additional hearing was unnecessary because the Hearing Officer already had found

sufficient evidence of the denial of FAPE and the propriety of placement at Kingsbury.

27.    The day after receiving a copy of this letter, DCPS sent our family an invitation to

attend an MDT meeting on March 2, 5, or 7, 2007.  None of these proposed dates comply with

the Hearing Officer's Decision.

28.    After receiving no response from the Hearing Officer by February 26, 2007, and

acknowledging the Hearing Officer's opinion that time was of the essence, we again wrote to the

Hearing Officer requesting that he issue a Decision or schedule a teleconference that day.

29.    We were informed that the Hearing Officer would not be in that day, so our counsel

followed up with an email requesting a teleconference. The Hearing Officer responded that he

would schedule both a teleconference and an expedited hearing.

30.    The Student Hearing Office subsequently scheduled a new hearing for March 13,

2007 – three weeks after we first notified it of the DCPS failure to hold the required meeting and

more than six weeks after the conclusion of the first evidentiary hearing in this matter. The

Hearing Officer never conducted the teleconference.

31.    Time is of the essence in this case.  Our son cannot wait an additional two weeks

just to participate in another hearing and wait for a new decision.

32.    Our son cannot enroll at Kingsbury until the Hearing Officer so orders.  Kingsbury is not willing to hold a spot for our son indefinitely.  His father and I are not able to sign a tuition contract in good faith as we are not able to afford the tuition.

33.    In the meantime, our son is suffering in his current placement.  The Hearing Officer already determined that a general education classroom is not appropriate for our son, so the longer he spends at St. Peter's the more his education suffers.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on March 2nd, 2007

Helen Haislmaier

(In the Matter of WH HOD: Februa ., 2007)

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigation Division*
### CONFIDENTIAL
## Coles B. Ruff, Jr., Due Process Hearing Officer

| | |
|---|---|
| In the Matter of William Haislmaier ) | **IMPARTIAL DUE PROCESS** |
| Date of Birth: November 23, 1998 ) | **REVISED** [1] |
| ("Student") ) | **HEARING OFFICER'S DECISION** |
| ) | |
| Petitioner, ) | Hearing Dates: December 13, 2006 |
| ) | January 22, 2007 |
| v. ) | Held at: 825 North Capitol St. NE |
| ) | Washington, DC |
| District of Columbia Public Schools ) | |
| ("DCPS" or "District") ) | |
| School: Non-Attending ) | |
| Respondent. ) | |

Counsel for Student:

Michael J. Eig, Esq.
5454 Wisconsin Ave. #760
Chevy Chase, Maryland 20815

Counsel for DCPS:

Quinne Harris Lindsey, Esq.
Office of General Counsel
825 North Capitol St. NE
Washington, DC 20002

## JURISDICATION:

A Due Process Hearing was convened on December 13, 2006, and concluded January 22, 2007, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a due process complaint submitted by counsel for the student and parent filed August 21, 2006. The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17 and the *Individuals with Disabilities Education Improvement Act of 2004* (I.D.E.I.A.), the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

## DUE PROCESS RIGHTS:

---

[1] This revised HOD is issued to include the provision directing DCPS to conduct an assistive technology evaluation.

1



**EXHIBIT**
**1**

The parent's counsel waived a formal reading of the due process rights.

**SUMMARY OF THE RELEVANT EVIDENCE:**

The Hearing Officer considered the representations made on the record by each counsel, the testimony of the witness(es) and the documents submitted in the parties' disclosures (WH 1-27 and DCPS 1-22) which were admitted into the record.

**FINDINGS OF FACT [2]:**

1. The student is currently age eight and has been determined to be eligible for special education and related services with a disability classification of multiple disabilities (MD) with classifications of learning disabled (LD) and other health impaired (OHI). The student's home school is Brent Elementary (Brent). The student, however, attends a private school: St. Peters Inter-Parish (St. Peter's) where he has attended for at least the last two school years. (DCPS-L)

2. Dr. Stephen Mott, a pediatrician at Georgetown University Hospital, has diagnosed the student with Childhood Absence Epilepsy and concerns in the areas of attention, executive function, aggressive outbursts and oppositional behavior. (WH 2)

3. In December 2004 when the student was age six and in the kindergarten at St. Peters, his mother (parent) initiated the eligibility process by contacting the DCPS Central Assessment and Referral and Evaluations (CARE) Center. The parent indicated to DCPS the student's diagnosis and provided independent evaluations. DCPS developed a student evaluation plan (SEP), reviewed the independent evaluations and conducted a psycho-educational evaluation and social history. (DCPS-Q, S)

4. The parent provided DCPS an independent occupational therapy (OT) evaluation conducted in December 2004. The evaluation noted the student had strengths in fine motor coordination and manual dexterity and gross motor skills. The evaluation noted he had "significant difficulty with visual motor interaction (using a pencil to produce shapes and letters) visual motor control (accuracy/control with pencil), self regulation of attention, ocular motor skills (eye movements), trunk stability and balance, handwriting and process and modulation of sensory information." The evaluator recommended the student receive occupational therapy services once per week to address these areas. (WH 11)

---

[2] The evidence that is the source of the finding of fact is noted within a parenthesis following the finding.

2

5. In March 2005 DCPS psychologist Ms. Janet Burns conducted the psycho-educational evaluation. As a part of her evaluation Ms. Burns reviewed Dr. Mott's report, the student's independent OT evaluation, observed the student at St. Peters and conducted her own assessments.[3] The assessments indicated the student's intellectual abilities were in the high average range and his academic achievement in Reading and Math in the low average range; his spoken language abilities were in the superior range. (DCPS-V)

6. Ms. Burns noted in her evaluation the student's cognitive functioning was better expressed with the use of oral language and expressive and receptive language skills. She also noted with regard to tasks requiring written expression (visual-motor integration, handwriting, visual scanning and speed accuracy) the student had severe deficits. She concluded that based upon the student's psycho-educational profile and the occupational therapy evaluation the student had learning disabilities in the area of written expression. (DCPS-V)

7. The independent OT evaluation was also reviewed by DCPS occupational therapists, including Ms. Richeelle Harvey. She recommended the student receive 45 minutes of direct OT services weekly. (DCPS-H, N)

8. On March 14, 2005, Ms. Irene Adderley, the DCPS CARE Center case manager, conducted a classroom observation of the student at St. Peter's and spoke with his classroom teacher. Ms. Adderley observed the student was attentive, followed classroom rules and directions and participated in the class activities. She noted he did not show signs of over-activity or aggression, appeared to comprehend directions from the teacher, acted appropriately in the classroom setting and appeared to be learning and retaining information. (DCPS-J)

9. On April 13, 2005, DCPS made a referral for a neuro-psychological evaluation to be conducted based on the recommendation of the student's physician. (DCPS-M)

10. On April 21, 2005, the multi-discipline team (MDT) convened and determined the student eligible with the LD classification and developed the student's initial individualized educational program (IEP). The parent participated along with St. Peter's principal and the student's classroom teacher at St. Peter's. The DCPS participants included Ms. Janet Burns, DCPS psychologist, and Ms. Vicia Banner the special educator and IEP developer. (DCPS-L)

11. The initial IEP prescribed 5 hours of specialized instruction and OT consultative services.[4] The IEP included motor skill goals and academic goals and short term

---

[3] Ms. Burns administered the Wechsler Primary-Preschool Scale of Intelligence-Third edition (WPPSI-III), the Berry-Buktenica Developmental Test of Visual-Motor Integration (VMI) and Young Children's Achievement Test (YCAT).

[4] The IEP also noted the student was receiving OT services outside school at the parent's expense.

objectives. The IEP indicated the student was in need of specialized instruction in reading and handwriting and that his special education services could be provided in a combination general education and special education setting and this "combination setting" was the least restrictive environment (LRE) for the student. The IEP noted the student would benefit from regular education in all other areas due to his academic strengths. (DCPS-L)

12. DCPS was prepared to and offered to implement the student's IEP and provide him special education and related services at his neighborhood school, Brent. However, the parent indicated the student would not be attending Brent at that time. The MDT concluded the student was in need of direct OT services. However, because the parent indicated the student would not attend Brent the IEP reflected only consultative services as DCPS was not allowed by the rules of the Catholic Arch Diocese to provide direct services to the students at St. Peters. Had the student attended Brent he would have been provided direct OT services and the IEP would have reflected those direct services. The parent did not request that the student be allowed to come to Brent to be provided the OT services. (Ms. Adderley's testimony)

13. After the student was determined eligible DCPS conducted a neuropsychological evaluation of the student on May 18, 2005. The evaluator indicated that because of the student's attention deficits he would benefit from small group instruction in basic skills, including writing. It does not appear the evaluation was reviewed by a MDT. (DCPS-K)

14. In February 2006 the parent obtained a developmental cognitive neurology evaluation conducted by Martha Bridege Denckla, M.D. Dr. Denckla recommended the student be given a disability classification of "multiply handicapped" due to the "multiple modules of brain dysfunction he exhibits in addition to having the seizure disorder..." She recommended the student have "the most sophisticated special education program available for the next two years." (DCPS-G)

15. In March and April 2006 Dr. Patricia Papero, a Pediatric Neuro-psychologist, conducted another independent neuropsychological evaluation of the student. She diagnosed the student with Dyslexia, Graphomotor Output Disorder and Attention Deficit Hyperactivity Disorder (ADHD). Dr. Papero indicated the student "works extremely slowly and will have significant difficulty in written output to complete academic tasks." She noted that it is not feasible to mainstream the student in a general education curriculum as he needs a full time special education placement. She believes the student also suffers with a language disorder. (Dr. Papero's testimony, WH 6)

16. Dr. Papero recommended, based on the student's conditions, that he be in an education placement with a low student/teacher ratio, he not be pulled out of a regular education program to resource room but be in a full time special education

(In the Matter of  WH  HOD: Februa...  ., 2007)

placement.  She noted "the severity of [the student's] learning disability must not be understated in planning for the level of services...less than a full time special education placement would do harm through negligence in addressing the range and extent of deficiencies that directly affect learning at this stage in his educational development." (WH 6)

17. On May 22, 2006, DCPS convened a MDT meeting at St. Peters to address the parent's concerns that the student was not making sufficient progress at St. Peters. The parent presented DCPS with the independent re-evaluations that had been conducted and the parent requested DCPS conduct a speech language evaluation. DCPS agreed to conduct the speech/language evaluation, review the new independent evaluations and reconvene the MDT meeting.  (DCPS-D)

18. On May 26, 2006, DCPS conducted a speech language evaluation which did not recommend the student receive speech language services.  (DCPS-C)

19. On May 30, 2006, Ms. Burns conducted a review of the student's updated neuropsychological evaluation, developmental cognitive neurology evaluation, and conducted an academic reevaluation.[5]  Ms. Burns had also conducted another observation of the student at St. Peters in February 2006.  She concluded that based upon her evaluation and her review of the additional independent evaluations the student continued to meet the criteria for the LD classification and, based on the medical documentation supporting the existence of Attention Deficit and Hyperactivity Disorder (ADHD), warranted a classification of Multiply Handicapped."  (DCPS-E)

20. The student has received private occupational therapy (OT) services once per week from Skills on the Hill, LLC since December 2004.  Since October 2005 the student has received an additional hour of OT services in the school setting.  An independent occupation re-evaluation was conducted in February 2006 which indicated the student had made improvements.  The DCPS OT therapist reviewed the re-evaluation and concurred with the recommendation the student continued to need weekly occupational therapy services.  (DCPS-H, I)

21. On June 5 2006, DCPS reconvened the MDT to revise the student's IEP based on the updated evaluations that had been conducted.  The MDT participants included the parent, Ms. Irene Adderley, the DCPS occupational therapist, Ms. Wanda Banks, Ms. Janet Burns, St. Peter's principal, the student's teacher and Ms. Banner the special educator and IEP developer.  (DCPS-D)

22. At the June 5, 2006, MDT meeting the student's disability classification was changed to multiply disabled – LD and other heath impaired (OHI).  Each of the DCPS discipline evaluators reported the results of their evaluations and/or

---

[5] Ms. Burns conducted the following assessments: Woodcock Johnson III – Tests of Achievement, Written Expression Scale-Oral and Written Language Scales (OWLS)

reviews of the independent evaluations. The parent expressed views about the student educational abilities. The MDT increased the student's specialized instruction to 10 hours per week and added direct OT services of 1 hour per week and 30 minutes of counseling. The IEP indicated the student would be out of general education 35% of the time. (DCPS-B)

23. DCPS offered Brent as the location where the IEP could be implemented and the student could attend. DCPS also offered Watkins Elementary School. The parent indicated she would visit both locations. There was no request or suggestions made by any of the MDT participants including the parent and the student's teacher that the student be placed in a full time special education placement. (Ms. Adderley's testimony, DCPS-B)

24. On June 8, 2006, a follow up meeting was convened with the parent, Ms. Adderley and the DCPS OT therapist, Ms. Wanda Banks. Ms. Janet Burns participated by telephone. The meeting was for the purpose of discussing additional OT concerns. DCPS agreed to conduct an assistive technology evaluation. Ms. Burns explained the social emotional goals for the student. DCPS also offered to provide the student extended school year (ESY) services for summer 2006 and discussed the student's transportation needs to attend Brent. The parent indicated she would consider the options and make a decision about the transportation and placement. (DCPS-A)

25. On June 8, 2006, DCPS issued a prior notice of placement for the student to be in a combination special education/general education setting located at Brent. (DCPS-A)

26. The parent did not enroll the student at Brent at the start of school year (SY) 2006-07 and continued the student's attendance at St. Peters. The services in the IEP are not being implemented at St. Peters as it is a general education school. The parent's counsel filed the current due process complaint August 21, 2006. (WH 1)

27. Ms. Michele Davis is an educational consultant engaged by the parent during summer 2006 to assist the parent in determining an appropriate placement for the student. Ms. Davis reviewed the student's evaluations and other data and observed the student at St. Peters on September 14, 2006. She spent approximately 45 minutes at St. Peters. She had no conversations with the student's tutor or the special education teacher and has not conducted any formal evaluation of the student. (Ms. Davis' testimony) [6]

---

[6] The parent's counsel sought to have Ms. Davis designated as an expert in special education. The Hearing Officer indicated this designation was too broad for expert designation. However, based on her experience the Hearing Officer agreed to consider her opinion of the appropriateness of the student's IEP and the proposed placement.

28. At St. Peters the student is currently in a classroom with about 25 second graders with a teacher and an aide sitting in quads.   It is a general education curriculum. The student currently receives pull out services with a special education teacher/tutor in addition to the classroom instruction. Ms. Davis observed that the student is not a behavior problem and he is trying to be productive and is motivated in the classroom. However, his skills seem to be regressing and he is showing deficiencies in all five areas of reading. (Ms. Davis' testimony

29. During Ms. Davis' observation the student had difficulty paying attention and remaining on task and was preoccupied with objects that did not have to do with the instruction being presented.  The student's responses to the teacher were not always understandable and he had difficulties with transitions.  As a result her observations, review of the student's evaluations and records and conversations with his evaluators and teacher, Ms. Davis concluded that pull out services were insufficient to meet the student's needs and that he could not be mainstreamed or benefit from services in an inclusion settings due to the severity of disabilities. (Ms. Davis' testimony, WH 4)

30. Ms. Davis also reviewed the IEP developed by DCPS on June 5, 2006.  She concluded the IEP was deficient and did not fully address the student's needs. The reading goals are appropriate but there is no base line in the current levels of performance from which a teacher can measure the student's progress relative to his goals and objectives.  The impact statement of his strengths is not a match for the goals and objectives that were developed in the IEP.  There are no written language goals and objectives mentioned in the IEP despite the fact the student is greatly impacted by his disability in the area of written expression.  There was also is no indication the student's executive functioning concerns are addressed. There are no supplementary aides in the IEP other than testing.  (Ms. Davis' testimony)

31. Ms. Davis observed Brent and the program proposed by DCPS for the student. She visited the second grade classroom which had 18 students and one teacher. Brent has only has one special educator with 12 special education students ranging in grades from Pre-K to 6th grade.  The special education services are delivered in an inclusion method with the special education teacher coming into the general education classroom to assist students.  The special education teacher pulls special education students out for small group work on an "as needed" basis. Ms. Davis concluded that the inclusion method used at Brent was inappropriate for the student and would even be detrimental to the student given the severity of his disabilities and the recommendations of his independent evaluators. (WH 5, Ms. Davis' testimony)

32. The student has been accepted by Kingsbury Day School (KDS).  KDS is a full time special education placement with a total of 80 students in 11 classrooms in its lower school, which is being offered to the student.  The classrooms average two adults to every four children.  The instruction is individualized to meet the

student's needs and the curriculum is integrated to experience the content areas through a variety of venues. The reading and writing methodologies are used to meet the student's needs. There are related service providers and the services are integrated in the classroom. The lower school has two program based counselors who provide consultative support to the classroom teachers and provide services to the students. There are two full time reading specialists assigned to the lower school who develop reading profiles and provide consultative services to the students. (Ms. Gustafson's testimony)

33. KDS can provide the student education, accommodations, and services that are recommended in his evaluations. A classroom has been identified for the student with a certified special education teacher and aide. KDS believes the student would require intensive intervention for three or four years then moving into a less restrictive or general education program. (Ms. Gustafson's testimony)

**ISSUE(S):** [7]

Did DCPS deny the student FAPE by:

1. Failing to evaluate the student in all areas of suspected disability? The parent alleges DCPS should have conducted an assistive technology evaluation in April 2005 prior the student's first IEP being developed. [8]

2. Failing to provide the student an appropriate IEP? The parent alleges the student's June 5, 2006, IEP is inappropriate because (a) it was not based on the recommendations made in the independent evaluations the parent provided, (b) the present levels of performance in the IEP are inadequate, and (c) the services prescribed are inadequate and the goals and objectives are inadequate.

3. Failing to provide the student an appropriate placement for SY 2006-07? The parent alleges Brent is an inappropriate placement for the student.

4. Failing to provide the student related services, specifically direct occupational therapy services from September 2005? [9]

---

[7] The alleged violation(s) and/or issue(s) raised in the complaint may or may/not directly correspond to the issue(s) outlined here. However, the issue(s) listed here were reviewed during the hearing and clarified and agreed to by the parties as the issue(s) to be adjudicated.

[8] The parent's counsel initially alleged DCPS did not conduct an OT evaluation. However, the parent presented an independent OT evaluation in 2005. The Hearing Officer indicated on the record that there is no claim by the parent the OT evaluations are insufficient; rather, the parent was asserting DCPS did not consider the independent evaluations in developing the IEP.

[9] The parent's counsel alleged DCPS should have provided the student equitable OT services although the parent chose for the student to not attend a DCPS public school after he was found eligible.

(In the Matter of WH HOD: February 2, 2007)

## CONCLUSIONS OF LAW:

Pursuant to IDEIA Sec. 1415 (f)(3)(E)(i) a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education (FAPE).

Pursuant to IDEIA § 1415 (f)(3)(E)(ii) in matters alleging a procedural violation a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to FAPE, significantly impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE, or caused the child a deprivation of educational benefits.

Pursuant to 5 DCMR 3030.3 the burden of proof is the responsibility of the party seeking relief.[10]  In this case the parent is seeking relief and has the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.[11]

1. Did DCPS deny the student FAPE by failing to evaluate the student in all areas of suspected disability?   Conclusion: The parent's counsel did not sustain the burden proof.

There was evidence that DCPS agreed to conduct an assistive technology evaluation at the June 8, 2006, MDT meeting.  Although the parent alleges DCPS should have conducted an assistive technology evaluation in April 2005 prior the student's first IEP being developed, there was no evidence that evaluation was suggested or requested prior to that meeting.  There was nothing presented to indicate that the evaluation has been conducted.  However, there was also no evidence that DCPS in not yet conducting this evaluation has impeded the student's right to FAPE or caused the student a deprivation of educational benefits.  However, the Hearing Officer directs in the Order below that DCPS, with the parent's consent, conduct the evaluation.

2. Did DCPS deny the student FAPE by failing to provide the student an appropriate IEP?  Conclusion: The parent's counsel sustained the burden of proof.

---

[10] Based solely upon the evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

[11] The parent's counsel asserted an identical complaint was filed July 25, 2006, and because of a delay in scheduling a new hearing date after a request for continuance, he withdrew the initial complaint and re-filed the complaint on August 21, 2006. The Hearing Officer concluded that despite the fact that the complaints may have been identical because the current complaint was filed after the burden of proof provision was amended the burden of proof in this adjudication is upon the parent.

(In the Matter of  WH  HOD: February ., 2007)

There was sufficient evidence presented that the IEP developed did not fully incorporate the recommendations made in the independent evaluations the parent provided, particularly with regard for the need for the student to be in a full time special education placement. In addition, the IEP does not contain sufficient present levels of performance from which a baseline of performance can be determined to measure the student's progress relative to his goals and objectives. Therefore, the Hearing Officer concludes the latest IEP developed does not fully address the student needs and is inappropriate.

3. Did DCPS deny the student FAPE by failing to provide the student an appropriate placement for SY 2006-07? Conclusion: The parent's counsel sustained the burden of proof.

There was sufficient evidence based on the student's independent evaluations and the testimony of Dr. Papero and Ms. Davis that the student is in need of a full time special education placement and that services provided to the student in an inclusion method as would be provided to him at Brent would be detrimental.

The parent has proposed the student be placed at KDS and there is sufficient evidence KDS can provide the student educational benefit. However, the Hearing Officer notes that although the student's independent evaluations indicated the severity of the student's deficits and that he was in need of a full time special education placement when the student IEP was developed on June 5, 2006, there was no member of the MDT who asserted the student was in need of a full time placement.

The Hearing Officer notes the MDT meeting was held and St. Peters and the student's teacher participated in the meeting. There is no indication that parent or the St. Peters staff disagreed at that meeting with the determination that the student could continue to receive services as he was then being provided at St. Stephens.

The Hearing Officer takes administrative notice that a MDT does not always follow the recommendations in an evaluation particularly when the evaluators making those recommendations are not members of the MDT and the MDT members consider other variables related to the student's educational performance and needs. It was not unreasonable at the time of the MDT meeting for DCPS to conclude the student could remain in the a similar inclusion setting as the student had been in for the past two years, particularly when there was no member of the team advocating for any other type of services and/or placement.

Now after a formal presentation of the independent evaluations in the hearing by a principal evaluator and classroom observations by Ms. Davis, the Hearing Officer is convinced that the unique needs of this student warrant and full time special education placement.

Pursuant to DC Code § 38-2501(c) DCPS is required to consider the placement options for a student in the following order (1) DCPS schools or District of Columbia public

charter schools; (2) Private or residential District of Columbia facilities; and (3) Facilities outside of the District of Columbia.[12]

Given that the student is in need of a full time special education placement DCPS should be given the opportunity to comply with that provision and consider and/or offer a full time public education placement and to consider the placement proposed by the parent. The Hearing Officer concludes DCPS has not been given a full opportunity to do so.

Therefore, rather than at this juncture place the student at KDS the Hearing Officer will direct DCPS to immediately convene a MDT/IEP placement meeting to amend the student's IEP to reflect the need of a full time special education placement, for the parent to be able to present the full cadre of individuals familiar with the needs of the student and determine an appropriate placement for the student as he has yet to have a full time IEP. Just as the independent evaluators and consultants participated in the hearing they could presumably participate in a MDT/IEP/Placement meeting.

The Hearing Officer is mindful that the KDS placement may not be available long and it is imperative that the student be offered an appropriate placement promptly. If DCPS does not promptly comply with this Order or if the parent is not satisfied with the placement offered the parent may request an expedited hearing to challenge the placement offered or any other procedural and/or substantive violation.

4. Did DCPS deny the student FAPE by failing to provide the student related services, specifically direct occupational therapy services from September 2005? Conclusion: The parent's counsel did not sustain the burden of proof. I

Ms. Adderley credibly testified that DCPS agreed the student was in need of direct OT services and would have provided those services had the student attended Brent after the student was determined eligible. It appears the parent requested the student be provided services at St. Peters but Ms. Adderley indicated those services could not be provided to the student at St. Peters because of the restrictions imposed by St. Peters. There was no evidence to refute this testimony.

**ORDER:**

1. DCPS shall, within ten (10) school days of the issuance of this Order, convene a multi-disciplinary team/individualized educational program (MDT/IEP) meeting to review the student's evaluations, review and revise the student's IEP to consider the appropriateness of a full time special education placement, discuss and determine placement and to allow the parent and the student's independent

---

[12] D.C. Code § 38-2501 (2003): (c) Special education placements shall be made in the following order of priority provided that the placement is appropriate for the student:
  (1) DCPS schools or District of Columbia public charter schools;
  (2) Private or residential District of Columbia facilities; and
  (3) Facilities outside of the District of Columbia.

(In the Matter of WH HOD: February 5, 2007)

evaluators to provide relevant data and be members of the MDT. DCPS shall fully consider the placement option proposed by the parent.

2. DCPS shall issue a prior notice of placement within five (5) school days of the MDT/IEP meeting if the recommended placement is public and thirty (30) calendar days if the recommended placement is private.

3. DCPS shall, within, thirty (30) days of the issuance of this Order, and with the parent's consent, conduct an assistive technology evaluation of the student.

4. Scheduling of the MDT/IEP meeting is to be arranged through parent's counsel.

5. DCPS will be given a day for a day extension of any of the prescribed time frames in this Order for any delay caused by the student, the parent and/or their representative(s).

6. If DCPS does not promptly comply with this Order the parent may immediately petition the DCPS Student Hearing Office for an expedited hearing and relief.


**APPEAL PROCESS:**


This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

Coles B. Ruff, Esq.
Hearing Officer
Date: February 5, 2007

Issued: 02/05/07

12

(In the Matter of WH HOD: February , 2007)

## In the MATTER OF William Haislmaier V. DCPS

### INDEX OF EXHIBITS

| EXHIBIT # | IDENTIFICATION | ADMITTED |
|---|---|---|
| WH 1-27 | Parent's Disclosures | Yes |
| DCPS 1-22 | DCPS Disclosures | Yes |
| | | |
| | | |
| | | |
| | | |
| | * A detailed list of the documents disclosed is contained in the parties' disclosure notices | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

(In the Matter of WH  HOD: Februa   , 2007)

# In the MATTER OF William Haislmaier V. DCPS

## RECORD OF PROCEEDING

| DATE | DESCRIPTION |
|---|---|
| 8/21/06 | Request for Due Process |
| | Notice of Pre-Hearing Conference (as applicable) |
| 9/25/06 | Notice of Due Process Hearing |
| | SETS Disposition Form |
| | Transcripts or audio tapes of hearing |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

14

(In the Matter of WH HOD: February 9, 2007)

| | |
|---|---|
| | |
| | |
| | |
| | |

# INDEX OF NAMES

## In the MATTER OF William Haislmaier V. DCPS

| | |
|---|---|
| Assistant Superintendent, Special Education (or Director) | |
| Special Education Coordinator | |
| DCPS School Psychologist | Ms. Janet R. Burns |
| Regular Education Teacher | |
| DCPS Case Manager | Ms. Irene Adderley |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| Child and Child's DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vs. child's name) | |
| Child's Parent(s) (specific relationship) | Ms. Helen C. Haislmaier (Mother) Mr. Edmond F. Haslmaier (Father) |
| Child/Parent's Representative | Michael J. Eig, Esq. |
| School System's Representative | Quinne Harris Lindsey, Esq. |
| Parent's Educational Consultant | Ms. Michelle R. Davis |
| | Ms. Jody Thoney |
| Kingsbury Day School | Ms. Marlene Gustafson |
| Private Psychologist | Dr. Patricia Papero |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

(In the Matter of  WH  HOD: February  5, 2007)

State Enforcement and Investigation Division (SEID)
Special Education Programs





# Due Process Complaint Notice

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) and/or** parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more that two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u> Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.  INFORMATION ABOUT THE STUDENT:

Student Name: <u>William Alfred T. Haislmaier</u>                     Birth Date: <u>November 23, 1998</u>

Address:     <u>10 4th Street, SE   Washington, D.C. 20003</u>

Home School:   <u>Brent Elementary School</u>

Present School of Attendance:   <u>St. Peter's Interparish, Capitol Hill</u>

Is this a charter school? <u>NO</u>        (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student: <u>Helen and Edmund Haislmaier</u>

Address (if different from the student's above): _____ <u>same as above</u>

Phone/Contact Number: _____<u>see below</u>_____  Fax Number (if applicable): _____<u>see below</u>

**EXHIBIT**
2

**B.** **Individual Making the Complaint/Request for Due Process Hearing**

Name:  Helen and Edmund Haislmaier

Complete Address:  same as above

Phone: (h)  see below  (w)  see below  (Fax)  see below  (e-mail)

Relationship to the Student:

☒  Parent        ☐  Legal Guardian        ☐  Parent Surrogate

☐  Self/Student        ☐  Local Education Agency (LEA)        ☐  Parent Advocate

**C.** **Legal Representative/Attorney (if applicable):**

Name:  Michael J. Eig

Address:  Michael J. Eig and Associates, P.C.

  5454 Wisconsin Avenue, Suite 760, Chevy Chase, Maryland 20815

Phone: (w) 301-657-1740  (Fax) 301-657-3843  (e-mail)

Will attorney / legal representative attend the resolution session?   ☐ Yes        ☐ No

**D.** **Complaint Made Against (check all that apply):**

☒  DCPS school (name of the school if different from page one)
☐  Charter school (name of the charter school if different from page one)
☐  Non-public school or residential treatment facility (name)
☐  Parent

**E.** **Resolution Session Between Parent and LEA:**

I understand that it is my right to have a resolution session to resolve this complaint.  I also understand that I may voluntarily waive this right if I choose.  (Note: All parties must agree to waive the resolution session to avoid having this meeting.)

☒  I wish to waive the Resolution Session.

**E.** **Mediation Process:**

IDEA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent.  Both parties can request mediation as an alternative to the Resolution Session.  Mediation is also available prior to a due process hearing, but mediation may not be used to deny or delay a parent's right to a hearing on parent's due process complaint. Please check all that apply:

☐  I am requesting mediation as an alternative to the resolution session meeting.
☐  I am requesting mediation services _only_.
☐  I do not wish to use a mediator at this time.

**G.**   **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions.  Provide complete details about all the facts supporting your claims.  (You may attach additional pages if needed):

1.     What is the nature of the problem, including the facts related to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

William Alfred T. Haislmaier, is a seven-year-old student enrolled at St. Peter's Interparish Parochial School ("St. Peter's"), who has been diagnosed with Absence Epilepsy (a seizure disorder, formerly termed "Petit Mal") and has multiple learning disabilities, as recently diagnosed by two leading neuro/psycho-educational specialists.  The District of Columbia Public Schools ("DCPS") has identified William as a student eligible for special education and related services under the Individuals with Disabilities Education Improvement Act ("IDEA") since April 2005.

William has been attending St. Peter's Interparish Parochial school since pre-Kindergarten, but he has become in increasingly dire need of more special education support.  For more than a year-and-one-half, William's parents have been supporting William on their own, with private tutoring twice a week and occupational therapy ("OT") once or twice a week.  A year-and-one-half ago, in December 2004, they approached the DCPS CARE Center, to request that the school system determine whether William might qualify for IDEA services, and if so, to offer him an appropriate educational program and placement.

On April 21, 2005, DCPS convened an IEP team, determined that William meets the criteria for an eligibility code of Learning Disability, developed an IEP for him, and proposed to implement this IEP at Brent Elementary School ("Brent ES"), his neighborhood school.  The IEP reflects that the team was aware of William's needs in the area of Motor Skills, and that William's parents were providing him with occupational therapy at their own expense.  Yet, the IEP lacks any consideration of DCPS providing occupational therapy; instead, the IEP simply calls for a single "OT consultation" without any direct services.  Indeed, it appears that DCPS undertook no steps to evaluate William's needs in the areas of speech/language or OT, despite indications from the testing results that this would have been an appropriate action.

When the IEP was completed on April 21, 2005, William had yet to finish the school year at St. Peter's, and his parents decided it was not beneficial to move him to a new school for the mere weeks remaining in the school year.  Therefore, the DCPS CARE Case Manager, Irene Adderly, suggested that William might be able to come to Brent ES to receive some related services.  A week later, Ms. Adderly wrote a letter to the parents informing them that Brent ES would not be able to provide services to a non-attending student, but that DCPS would "continue to provide related services in the areas of speech and occupational therapy, if the service is warranted."  Though the parents implored (and gave consent for) DCPS to explore whether William required any kind of special education supports, DCPS failed to complete this process and reconvene the team.  (In fact, William was supposed to have had two DCPS OT assessments done: one was promised after the initial IEP meeting in April 2005, and the other was promised within the first few weeks of the 2005-06 school year.  Neither occurred.)

In September 2005, Ms. Haislmaier spoke with Ms. Adderly, and in January 2006, with Gayle Hall, also from the CARE Center, regarding whether Brent ES would be willing/able to provide IDEA services to William.  In January 2006, Ms. Haislmaier spoke to the Brent ES

Principal, who responded that the school would be unable to provide appropriate services to William. The Principal suggested that the parents apply for an out-of-boundary transfer to another school, but despite having done this in a timely manner & within the deadline for the out-of-boundary lottery, DCPS denied all three of William's out-of-boundary transfer requests.

Ms. Haislmaier approached DCPS on March 27, 2006, and re-verified her residency in the District of Columbia. William's IEP subsequently expired, without DCPS convening any meeting to complete an IEP for the 2004-05 / 2005-06 school years.

Most recently, DCPS did revisit the IEP planning process, when the parents provided copies of evaluations that they had obtained from outside experts. Upon realizing that William's IEP had expired and that the school system was out of compliance, DCPS reconvened the IEP team on May 22, 2006. At that meeting, however, the school system was still unprepared to develop an IEP for the 2006-07 school year; the team requested that the parents obtain additional outside testing results and provide them to DCPS. The parents did so, and the team reconvened on June 5, 2006. At that meeting, the team agreed that William remains eligible for special education services as a student with Multiple Disabilities ("Specific Learning Disability" and "Other Health Impairment") and developed an IEP for him. The DCPS IEP offers William 11.5 hours of special education, all out of the mainstream setting, as follows: 10 hours per week of specialized instruction, 1 hour per week of occupational therapy, and 30 minutes per week of counseling. The IEP proposes that William will be in the general education environment for 65% of his school week. DCPS proposed to implement the 2006-07 IEP at Brent ES.

Upon review of the proposed IEP, the parents do not believe that it is appropriate or sufficient to meet William's needs, because it is missing goals and objectives in some critical areas. Perhaps more critically, it calls for William to spend the majority of his time in general education classes. This amount of time is insufficient even to address the multiple goals and objectives that DCPS identified – in the academic areas of reading, written expression and math – much less to address all of the goals and objectives that DCPS omitted. William is having increasing difficulty succeeding in his general education setting at St. Peters, thus demonstrating that he requires more support, more structure, and a smaller class size and student:teacher ratio than is available in the general education setting. Most important, the respected outside evaluators (whose opinions were provided to DCPS at significant cost to the family) all recommended that William requires a full-time special education placement.

In sum, the school system's has failed to provide William a FAPE as follows:

(1) DCPS failed to undertake all necessary evaluative measures to understand William's special education needs and to develop an educational program for him.

(2) The failure to propose and/or complete appropriate evaluations, and to understand and incorporate the findings made by the outside evaluators, has resulted in an IEP that is inappropriate and wholly insufficient to meet William's needs. In fact, the school system's lack of understanding is reflected on the IEP's Present Levels of Performance page, which includes only very minimal mention of William's broad-reaching (and deep-reaching) disabilities

(3) DCPS prevented William from accessing the minimal services that DCPS did believe he required; he was never permitted to come to Brent ES, and DCPS never recommended that he receive these services elsewhere.

These failures constitute a denial to William of the free appropriate public education to which he is entitled under the IDEA. For the 2006-07 school year, the parents have secured William's admission to The Kingsbury Day School, a full-time special education school, where he can receive all of the educational supports he requires, with integrated related services as necessary.

2.    To the extent known to you at this time, how can this problem be resolved?

As a remedy for the school system's failures, the parents request (1) placement and funding for William for the 2006-07 school year at Kingsbury in a full-time special education placement, and (2) retroactive reimbursement as compensatory education for William's private tutoring and occupational therapy.

3.    Issues presented:

Whether DCPS has denied William a FAPE since April, 2005 (for part of the 2004-05 school year and the 2005-06 school year to date);
Whether DCPS has failed to offer William a FAPE for the 2006-07 school year;
Whether placement at Kingsbury Day School for the 2006-07 school year is proper.

**H.    Estimated amount of time needed for the hearing:    1 Day**

Note:   In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing. Please indicate if you believe more that two hours will be needed.

**I.    Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type) _N/A_
- Special Communication (please describe the type) _N/A_
- Special Accommodations for Disability (please be specific) _N/A_
- Other _N/A_

**J.** **Waiver of Procedural Safeguards**:

    ☐    I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

**K.** **Parent Signature and Affirmation**:

I affirm that the information provided on this form is true and correct.

_____

Signature of Parent or Guardian             Date

**L.** **Signature of Attorney/Legal Representative**:

_____     8·21·06

Legal Representative / Advocate           Date

**M.** **Signature of LEA Representative (if hearing requested by LEA)**:

_____

Representative of LEA              Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

**MICHAEL J. EIG AND ASSOCIATES, P.C.**
ATTORNEYS AT LAW
SUITE 760
5454 WISCONSIN AVENUE
CHEVY CHASE, MARYLAND 20815-6938

(301) 657-1740
FACSIMILE (301) 657-3843

FEB 2 2 2007

| | | | |
|---|---|---|---|
| Michael J. Eig | MD, DC | Paula A. Rosenstock | VA, DC |
| Haylie M. Iseman | MD, DC, NY | Patricia Cyr | CA, DC |

February 22, 2007

Hearing Officer Coles Ruff
c/o Sharon Newsome
Student Hearing Coordinator
District of Columbia Public Schools
Student Hearing Office
825 North Capitol Street, NE, 8th Floor
Washington, D.C. 20002

**Re: William Alfred T. Haislmaier**
*via facsimile and first-class mail*

Dear Mr. Ruff:

As you know, on February 5, 2007 you issued a revised decision in the above-named student's case, finding that William is in need of a full-time special education placement. You ordered DCPS to convene an MDT/IEP meeting *within ten school days* to review and revise the IEP to consider the appropriateness of a full-time special education placement. As of today, nobody from DCPS has contacted my office (as you ordered them to do), or my clients, to schedule the MDT/IEP meeting.

In your decision, you state that if DCPS fails to comply with the order that the parents may immediately petition the DCPS Student Hearing Office for an expedited hearing and relief. While we are willing to attend an expedited hearing, we do not believe that a hearing is necessary. DCPS has failed to convene the MDT/IEP meeting as ordered and you have already found that "there is sufficient evidence KDS can provide the student educational benefit." We therefore request that you issue the requested relief – placement and funding of William Haislmaier at the Kingsbury Day School for the 2006-07 school year and retroactive reimbursement as compensatory education for William's private tutoring and occupational therapy.

Time continues to be of the essence here. Please let us know how you would like to proceed. Thank you.

Sincerely,

Michael Eig /PAR

Michael J. Eig

cc:     Quinne Harris Lindsey, Esq.
        Mr. and Mrs. Haislmaier

**EXHIBIT**
3

**MICHAEL J. EIG AND ASSOCIATES, P.C.**
ATTORNEYS AT LAW
SUITE 760
5454 WISCONSIN AVENUE
CHEVY CHASE, MARYLAND 20815-6938

(301) 657-1740
FACSIMILE (301) 657-3843

FEB 2 6 2007

| | | | |
|---|---|---|---|
| Michael J. Eig | MD, DC | Paula A. Rosenstock | VA, DC |
| Haylie M. Iseman | MD, DC, NY | Patricia Cyr | CA, DC |

February 26, 2007

Hearing Officer Coles Ruff
c/o Sharon Newsome
Student Hearing Coordinator
District of Columbia Public Schools
Student Hearing Office
825 North Capitol Street, NE, 8th Floor
Washington, D.C. 20002

**Re: William Alfred T. Haislmaier**
*via facsimile and first-class mail*

Dear Mr. Ruff:

We wrote to you on February 22, 2007, to advise that DCPS had failed to take any steps toward compliance with your Decision in William's case, and to further request that you place him forthwith at Kingsbury Day School. As you have recognized in your Decision, and as we emphasized in our letter, time is very much of the essence now and we need urgent action to protect William's rights. Accordingly, I am asking that you either issue a Decision in response to our communication by the close of business today, or conduct a status teleconference with counsel later today. Thank you.

Sincerely,

Michael J. Eig

cc:     Quinne Harris Lindsey, Esq.
        Mr. and Mrs. Haislmaier
        Marlene Gustafson

**EXHIBIT**
**4**

| | |
|---|---|
| **From:** | "Coles Ruff" <Coles@Ruff.net> |
| **To:** | "MICHAEL EIG" <MICHAEL.EIG@lawforchildren.com> |
| **Date:** | 2/27/07 11:35:55 PM |
| **Subject:** | Re: Haislmaier |

Thanks.  I got the letter.  I would prefer to have a conference call with
the three of us.  I will alert Ms. Newsome to set this for expedited hearing
just in case.

C. Ruff
----- Original Message -----
From: "MICHAEL EIG" <MICHAEL.EIG@lawforchildren.com>
To: <coles@ruff.net>
Sent: Monday, February 26, 2007 10:47 AM
Subject: Haislmaier


> Could you please contact me about this matter?  We sent a letter this
> morning, following up on our letter of last Thursday, but were told that
> you would not be in DC today.   Time is very much of the essence at this
> point.  I would also be happy to try to get DC counsel on the line if
> you call.  I will be in my office most of the day at 301-657-1740.
> Thanks.
>
> Michael J. Eig, Esq.
> Michael J. Eig and Associates, P.C.
> 5454 Wisconsin Avenue, Suite 760
> Chevy Chase, MD  20815-6938
> phone: 301-657-1740
> fax: 301-657-3843
> email: michael.eig@lawforchildren.com

**EXHIBIT**

5

# District of Columbia Public Schools
### State Enforcement & Investigation Division
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



X EXPEDITED HEARING

HEARING NOTICE

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:     Parent (or Representative): **M. EIG**          Fax No.: _____

       LEA Legal Counsel: **Q. HARRIS-LINDSEY**

RE:    **HAISLMAIER, WILLIAM**      and (LEA) DOB: _____
            Student's Name

FROM: **SHARON NEWSOME**
            Special Education Student Hearing Office Coordinator

DATE SENT: **2/28/07**

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

    DATE: **3/13/07**                      EXPEDITED
                                              HEARING
    TIME: **9:00 AM**

    AT:    825 North Capitol Street, NE, Washington, DC
              8th Floor

    ASSIGNED HEARING OFFICER: **RUFF**

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to
the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances
are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the
Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[X] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you
are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times
during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the
SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a
final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of
evidence and witnesses to the opposing party is required at least *five business days* prior to the hearing with copies to the Special
Education Student Hearing Office.

**EXHIBIT**
tabbies
**6**



**St. Peter's Interparish School**
422 THIRD STREET, S.E. WASHINGTON, DC 20003

ESTABLISHED 1868
PHONE: 202-544-1618
FAX: 202-547-5101

January 11, 2007

Dear Mr. And Mrs. Haislmaier,

I am sorry to learn that your hearing has again been postponed. Although we are trying hard to meet Williams's needs here and are implementing much more than the requirements of the IEP, we are still unable to do so.

Attached is a report from Mrs. Hale our Reading Resource Teacher that will give you a good picture of where William is at this point in time. Although he works hard and tries his best he is still significantly below grade level. His math is impacted tremendously by his reading problems. He needs someone to read the directions or word problems to him. He also needs explanations of what is expected even with the directions are read to him.

Our hope is that William will soon have the proper educational placement to meet his needs. He is a bright, engaging, cooperative child and we want to see him succeed.

Sincerely,

Pamela Klobukowski
Principal

EXHIBIT

7



**St. Peter's Interparish School**
422 THIRD STREET, S.E. WASHINGTON, DC 20003

ESTABLISHED 1868
PHONE: 202-544-1618
FAX: 202-547-5101

January 11. 2007

To Whom It May Concern:

I serve as the reading resource teacher at St. Peter's Interparish School where William Haislmaier is currently enrolled in the second grade. I worked with William during first and second grade to support his reading.

I see William individually for approximately 25 minutes per day, four days per week. Individually, William and I drill sight words and review word attack strategies. William is cooperative and polite. Although he works diligently, he is very inconsistent in his sight word vocabulary. He often struggles with "of", "for" or "with", which I know is disheartening for him. On a diagnostic test given this week, his independent reading level was assessed at the pre-primer level. As over 85% of his classmates scored between the second grade level and the fifth grade level, his reading ability is a source of frustration and embarrassment for him.

William also comes to reading group in my room, with four other students to read and discuss literature and to write about what we read. I often read a story aloud, and William has interesting comments to share with the group. I try not to have him read aloud without giving him a chance to rehearse with me first. I also try to choose shorter passages for him to read aloud. The real problem in reading group comes when we reflect on the story in writing. This is an incredible struggle for William, and the difference between his verbal commentary and his written answers is quite significant. Even when given a stem sentence or a shorter, differentiated assignment, his neuromotor abilities really get in the way of his expressing himself fully. William likes to draw, and he often uses a drawing to complement his words.

After school, William attends a reading program twice a week for 30 minutes. He works with tutors to read books at his level and take computerized quizzes for comprehension assessment. Although most students in the program read independently, the tutors sit at William's side to assist him in reading the books and taking the quizzes. The quizzes seem particularly fatiguing for him.

Please contact me if you have any questions.

Sincerely,

Alice Hale

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

W.H., *et al.*,

          Plaintiffs,

          v.

DISTRICT OF COLUMBIA, *et al.*,

          Defendants.

C.A. No.

## DECLARATION OF MARLENE GUSTAFSON

Marlene Gustafson declares and says as follows:

1.    I am the Director of the Kingsbury Day School. I make this declaration at the request of and for use by the attorneys representing W.H. in special education matters. The matters discussed herein are from my personal knowledge.

2.    I am a certified special educator in the State of Maryland. I have worked as a special education school teacher and an administrator in both the public school system and at private schools, for more than thirty years. I have served as administrator at Kingsbury Day School for approximately ten years.

3.    Kingsbury Day School is a nonpublic day school that specializes in educating students with learning disabilities.

4.    As the Hearing Officer found W.H. needs a full time special education program, and the Kingsbury Day School is an appropriate placement for him.

5.    I do not believe that a less intensive program would appropriately address W.H.'s needs.

6.      I believe that W.H. will receive significant educational benefit at Kingsbury, in this setting where both his strengths and his disabilities are being addressed.  I anticipate that he will make progress in all goal areas throughout the rest of the school year.

7.      While I know that W.H. will receive significant educational benefit from being at Kingsbury, unless he enrolls virtually immediately, Kingsbury will be unable to hold a spot on the roles for him.


I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


Executed on   3/2/07

                  Marlene Gustafson

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

W.H., *et al*.,

     Plaintiffs,

     v.

DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

**Civil Action No. _____**

## <u>CERTIFICATE</u> <u>OF</u> <u>SERVICE</u>

Pursuant to Rules 65(a) of the Federal Rules of Civil Procedure, I certify that a copy of the foregoing Motion For Temporary Restraining Order, with accompanying Memorandum and proposed Order, was delivered in person to the Office of the Attorney General for the District of Columbia, counsel for defendants on March 6, 2007.

I also certify that I contacted Ed Taptich in the Office of the Attorney General for the District of Columbia via telephone on March 5, 2007, to notify him that Motion For Temporary Restraining Order, with accompanying Memorandum and proposed Order would be filed with the United States District Court for the District of Columbia on March 6, 2007.

Respectfully submitted,

_____ /s/ _____
Michael J. Eig     #912733
Haylie M. Iseman   #14782
Paula A. Rosenstock #494580
Michael J. Eig and Associates, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, MD 20815

(301) 657-1740

Matthew B. Bogin     #911552
77 South Washington Street
Rockville, Maryland 20850
(301) 251-4410

Counsel for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| W.H., *et al*., | |
|     Plaintiffs, | |
|     v. | Civil Action No. _____ |
| DISTRICT OF COLUMBIA, *et al.*, | |
|     Defendants. | |

**ORDER**

Upon consideration of plaintiffs' motion for a temporary restraining order and it appearing to the Court that plaintiffs have met the test for issuance of injunctive relief, it is by the Court _____ day of _____, 2007, hereby

ORDERED, that said motion be and the same hereby is granted; and it is

FURTHER ORDERED, that the Kingsbury Day School is W.H.'s current educational placement; and it is

FURTHER ORDERED, that defendants must immediately place and fund W.H. in this current educational placement; and it is

FURTHER ORDERED, that the parties shall appear before the Court for a hearing plaintiffs' motion for preliminary injunction on _____, 2007 at _____o'clock _.M.

\
\
_____
United States District Judge

entered at _____ o'clock _.M.