# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **W.H., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civ. No. 07-0435 (JR)** |
| ) | |
| **DISTRICT OF COLUMBIA, et al.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR TEMPORARY RESTRAINING ORDER

The Defendant, by counsel, hereby responds to Plaintiffs' "Moption for Temporary Restraining Order," filed herein March 6, 2007 ("Motion"). For the reasons set forth below, there is no merit to the Motion and the action herein should be dismissed forthwith.

## PRELIMINARY STATEMENT

This action seeks Court intervention in administrative proceedings initiated by the Plaintiffs pursuant to the Individuals With Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 et seq. ("IDEIA"), but not yet concluded. In an administrative Hearing Officer's Decision ("HOD") issued February 5, 2007, the District of Columbia Public Schools ("DCPS") was directed to convene, within 10 school days, a Multidisciplinary Team meeting to review and revise, if appropriate, an Individualized Educational Plan and resultant placement for the student, W.H. ("MDT/IEP meeting"). See Attachment 1 (hereinafter cited "HOD"), p. 11. The HOD also provided that if that

directive were not timely accomplished, the Plaintiffs could "immediately petition the DCPS Student Hearing Office for an expedited hearing and relief." HOD, p. 12.

The MDT/IEP meeting not having been convened within the 10 day period, the Plaintiffs invoked the February 5 HOD's permission to request a further administrative hearing, and refused thereafter to participate in an MDT/IEP meeting – one that was offered to be held March 2, 5 or 7, 2007. The further administrative hearing requested by the Plaintiffs is currently scheduled to be held March 13, 2007.

Notwithstanding the imminence of administrative proceedings the Plaintiffs have requested and been granted, and despite the Plaintiffs' refusal to participate in an MDT/IEP meeting initially directed by the February 5, 2007, HOD, the Plaintiffs here request that the Court summarily assume DCPS' role in revising the student's IEP, and that it make a placement decision for the student in the first instance. To that extent, the Motion immediately seeks the same relief the Plaintiffs are seeking both in the complaint herein, and in the further administrative proceedings to be conducted March 13.

I.      **The Statutory Framework Involved in This Action.**

The purpose IDEIA is "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE'] that emphasizes special education and related services designed to meet their unique needs. . . ." 20 U.S.C. §1400(d)(1)(A). The Act requires school districts to adopt procedures to ensure appropriate educational placement of disabled students. See 20 U.S.C. §1413. School districts must also develop comprehensive plans for meeting the special educational needs of disabled students. See 20 U.S.C.§ 1414(d)(2)(A). These plans, known as IEPs (Individualized Educational Plans), must include a written "statement of the child's present levels of educational

performance, . . . a statement of the measurable annual goals, [and] a statement of the special education and related services . . . to be provided to the child." See 20 U.S.C. § 1414(d)(1)(A).

A student's eligibility for a FAPE under IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" and/or "individualized educational plan team" ("MDT/IEP team"). Such a team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE. See 20 U.S.C.§1414(d)(1)(B).

The IDEA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement process. See 20 U.S.C. §§1414(f), 1415(b)(1). "The IEP team shall conduct an initial evaluation of a child within a reasonable time of receiving a written referral and parental consent to proceed within timelines consistent with Federal law and D.D.Code §38-2501(a)." 5 D.C. Mun. Regs. §3005.2. The regulations require DCPS to use "a variety of assessment tools and strategies" to gather "relevant functional and developmental information about the child." Id. §3005.9(b). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, see 20 U.S.C. §§1415 (b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel," 20 U.S.C. §1415(h)(1). A qualified impartial hearing officer conducts the due process hearing in accordance with IDEA.

Parents "aggrieved by" a hearing officer's findings and a decision may bring a civil action in either state or federal court. 20 U.S.C. §1415(i)(2); 5 D.C. Mun. Regs.

§3031.5. The district court has remedial authority under the Act, and broad discretion to grant "such relief as the court determines is appropriate" under IDEA as guided by the goals of the Act. 20 U.S.C. §1415(i)(2)(B)(iii).

## II.    The Factual Background to This Complaint and Motion.

The timeframe immediately pertinent here began in June, 2006, when DCPS created an IEP for the student specifying a variety of special education services, and proposed placement of the student at Brent Elementary School, the student's home school where such services could be provided. HOD, paras. 22-25. The student's parent ultimately challenged the IEP and placement in a due process hearing complaint filed with DCPS August 21, 2006. The parent refused to enroll the student at Brent, but continued his attendance at St. Peters Inter-Parish School, a private school the student had attended for the prior two years, and a location where the special education services specified in the IEP could not be provided. HOD, paras. 1, 12.

Administrative hearings were held December 13, 2006, and January 22, 2007. HOD, p. 1. On February 5, 2007, a DCPS administrative Hearing Officer issued his decision concerning concerning the issues raised in the August 21 hearing request. On two of the issues involved, the Hearing Officer found that the parent had not satisfied her burden of proof. HOD, pp. 9, 10. He did, however, conclude that the student's IEP "does not fully address the student needs and is inappropriate." HOD, p. 10.

Moreover, while he observed that "[i]t was not unreasonable at the time of the MDT meeting for DCPS to conclude the student could remain in [a] similar inclusion setting as the student had been in for the past two years, particularly when there was no member of the [MDT] team advocating for any other type of services and/or placement,"

the Hearing Officer also concluded that placement at Brent would not be appropriate to provide a now-deemed-necessary full time special education environment. HOD, p. 10.

Accordingly, the Hearing Officer ordered DCPS, within 10 school days, to convene an MDT/IEP meeting "to review the student's evaluations, review and revise the student's IEP to consider the appropriateness of a full time special education placement, discuss and determine placement and to allow the parent and the student's independent evaluators to provide relevant data and be members of the MDT.  DCPSD shall fully consider the placement option proposed by the parent." HOD, pp. 11-12.  DCPS was further ordered to issue a notice of placement within 5 school days of the MDT/IEP meeting if the placement were to be at a public school, or 30 days after the meeting if the placement were to be at a private school. HOD, p. 12.

The Hearing Officer also provided a mechanism for assuring prompt DCPS action, specifically stating that "[i]f DCPS does not promptly comply with the is Order the parent may immediately petition the DCPS Student Hearing Office for an expedited hearing and relief." HOD, p. 12.

As recognized in the Motion (p. 7, n. 4), the schools were shut down for three snow days during the period after the HOD; February 19 was also a Federal holiday. Accordingly, the 10 school-day period for convening the MDT/IEP meeting ended on Friday, February 23.  On the prior day, having said nothing earlier on the subject and made no prior inquiries, Plaintiffs' counsel wrote to the Hearing Officer, stating that no hearing had yet been convened, and that the parent wanted to avail herself of the further relief provided in the HOD; a further February 26, 2007 letter of counsel pressed the

same point. See Attachments 2, 3.  In response, the Hearintg Officer set March 13, 2007, as the date for further hearings. See Attachemt 4.

On Wednesday, February 28, 2007 – the thirteenth school day after the February 5 HOD – DCPS proposed to Plaintiffs' counsel three dates for the MDT/IEP meeting: March 2, 5 or 7. Complaint, para.32.  By letter that same day, counsel refused to participate in such a meeting in a letter noting his preference for litigating:

> The HOD stated that, if the school system failed to do so, we could return to an expedited hearing for immediate relief.  *A hearing has been set for March 13, 2007 and we are seeking immediate relief in that forum.* [Emphasis added.]

The further administrative hearing requested by the Plaintiffs are currently scheduled for March 13, 2007.  This action – and even more peremptorily, this Motion – seek to preempt the very administrative processes the Plaintiffs have initiated.

## ARGUMENT

The complaint herein (p. 10) seeks a "declaratory judgment that the relief being offered by the Student Hewaring Office pursuant to the IDEA is insufficient" and "injunctive relief requiring DCPS to place and fund W.H. at The Kingsbury Day School." The Motion herein seeks the same relief – summarily and immediately, even before considering a simultaneously filed motion for preliminary injunction.  The Defendants submit that on its face, the Motion is wholly without merit.

## I.      The Applicable Standards for Injunctive Relief.

In order to obtain injunctive relief, Plaintiffs must satisfy *each* prong of the following four-part test: (1) that there is a substantial likelihood of success on the merits; (2) that there is an imminent threat of irreparable harm should the relief be denied; (3) that more harm will result to plaintiffs from the denial of the injunction than will result to the

defendants from its grant; and (4) that the public interest will not be disserved by the issuance of the requested order. District of Columbia v. Group Ins. Admin., 633 A.2d 2, 21–24 (D.C. 1993); Barry v. Washington Post Co., 529 A.2d 319, 320–321 (D.C. 1987); In re Antioch Univ., 418 A.2d 105, 109 (D.C. 1980); Wieck v. Sterenbuch, 350 A.2d 384, 387 (D.C. 1976); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir. 1977); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C.Cir. 1958).

**II.    The Plaintiffs are Not Entitled to a Injunctive Relief in This Case.**

    **A.    The Plaintiffs will not succeed on the merits of their claims. They have not exhausted their administrative remedies, and the Complaint must be dismissed.**

The most recent summary of the processes provided by IDEIA relevant here, and the administrative procedures required to be exhausted before resort to this Court, is found in Spencer v. District of Columbia, Civ. No. 05-2439 (D.D.C.) Memorandum Opinion, January 11, 2006, pp. 5-6.:

> Congress enacted IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." *Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C.Cir. 2000 (quoting 20 U.S.C. §1400(d)(1)(A)). Under IDEA, school districts must develop IEPs to meet the special educational needs of disabled students. *Id.* (citing 20 U.S.C §1414(d). The IEP must include "a statement of the child's present levels of educational performance[,] a statement of measurable annual goals, [and] a statement of the special education and related services . . . to be provided to the child." *Id.* As a procedural safeguard, IDEA affords parents the right to examine all records regarding their child's disability and to participate in meetings regarding the child's identification, evaluation, and educational placement. 20 U.S.C. §1415(1). If a parent objects to the child's identification, evaluation, or educational placement, the parent may request a due-process hearing before a hearing officer. *Calloway,* 216 F.3d at 3 (citing 20 U.S.C. §§ 1415(b)(6), (f)(1)). A parent who is aggrieved by a hearing officer's determination ("HOD") may bring suit in state or federal court. *Id.* (citing 20 U.S.C. §1415(i)(2).

The administrative process set forth by IDEA as not "just an optional stop on the way to court." *Andersen by Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1025 (D.C. Cir. 1989). Rather, the philosophy underpinning IDEA requires a plaintiff to exhaust administrative remedies before turning to the court. *Cox v. Jenkins*, 878 F.2d 414, 418 (D.C. Cir. 1989). As the D.C. Circuit has pointed out,

> [t]he exhaustion doctrine serves several important purposes: it prevents courts from interrupting the administrative process permanently; it allows the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures that there will be a complete factual record for the court to review; and it presents the parties from undermining the agency by deliberately flouting the administrative process.

*Id*. at 419. Under IDEA, a plaintiff's failure to exhaust administrative remedies deprives the court of authority to hear the suit. 20 U.S.C. §1415(c), (e); *Rann v. Chao*, 346 F.3d 192, 195 (D.C.Cir. 2003) (noting that the circuit treats exhaustion as a jurisdictional requirement in IDEA cases); *Cox*, 878 F.2d at 422 (concluding that the district court "had no authority to hear" a suit in which the plaintiffs had failed to exhaust their remedies); *Lemon v. Dist. of Columbia*, 920 F.Supp. 8, 10 (D.D.C. 1996) (stating that exhaustion "is a jurisdictional prerequisite to any claim for judicial relief arising out of the IDEA"). Only "where exhaustion would be futile or inadequate may a plaintiff bypass the administrative process and proceed to court. *Cox*, 878 F.2d at 419 (citing *Honig v. Doe*, 484 U.S. 305, 326-27 (1988)). The plaintiff bears the burden of showing futility or inadequacy. *Id.*; *Moss v. Smith*, 794 F.Supp. 11, 13 (D.D.C. 1992).

In this case, the Plaintiffs were successful in obtaining relief in the February 5 HOD, and in obtaining an assurance that further administrative proceedings would be immediately conducted if DCPS' compliance with that HOD did not promptly occur. Even assuming that DCPS' (admittedly tardy) offer to hold the MDT/IEP meeting did not satisfy the HOD's directive, the Plaintiffs availed themselves of the Hearing Officer's invitation to return for further hearings. And those hearings, scheduled for March 13, have not yet been conducted or completed.

The Plaintiffs entitlement to be in this Court under IDEIA is to have administrative decisions reviewed. Yet have not appealed the February 5 HOD. And the

further administrative hearings they have requested are not yet concluded, much less have

those additional proceedings resulted in a further decision susceptible of judicial review.

> **B.    There has been no demonstration that the student will
> <u>suffer irreparable harm in the absence of injunctive relief</u>.**

An essential prerequisite to injunctive relief is a sufficient showing by the

plaintiffs that they will suffer irreparable harm if injunctive relief is not granted. <u>See</u>, <u>e.g.</u>,

<u>Davenport v. International Brotherhood of Teamsters</u>, 166 F.3d 356, 360 (D.C. Cir.

1999).  <u>See</u> <u>also</u> <u>Sampson v. Murray</u>, 415 U.S. 61, 88–90 (1974).

> Bare allegations of what is likely to occur are of no value since the court
> must decide whether the harm will <u>in fact</u> occur.  The movant must
> provide proof . . . indicating that the harm is certain to occur in the near
> future.

<u>Wisconsin Gas Co. v. FERC</u>, 758 F.2d 669, 674 (D.C. Cir. 1985).  As observed by Judge

Urbina recently in <u>Spencer v. District of Columbia</u>, <u>supra</u>, a case similarly claiming that a

requested due process hearing was improperly delayed:

> A movant must "demonstrate at least 'some injury'" to warrant the granting of an
> injunction.  <u>CityFed Fin. Corp. [v. Office of Thrift Supervision]</u>, 58 F.3d [738, 747
> (D.D.Cir l995)] (quotation omitted).  Indeed, if a party makes no showing of
> irreparable injury, the court may deny the motion for injunctive relief without
> considering the other factors. <u>Id</u>.

Mem. Op. at pp. 3-4.

"[A]n injunction should not be issued unless the threat of injury is imminent and

well-founded, *and* unless the injury itself would be <u>incapable of being redressed</u> after a

final hearing on the merits." <u>Wieck</u>, 350 A.2d at 388 (emphasis added). <u>See also</u>

<u>Wisconsin Gas Co.</u>, 758 F.2d at 674. The movant has the burden to come forward with

admissible evidence that he will suffer irreparable harm unless injunctive relief is

granted. <u>Davenport</u>, 166 F.3d at 360.

Here, there has been no showing whatever of irreparable harm pending a resolution of the merits of either the simultaneously filed motion for preliminary injunction, or of the merits of the complaint itself.  To the extent the Plaintiffs suggest an urgency now, such claims are at odds with the Plaintiffs' prior conduct, and are unworthy of deference here.  As indicated in the HOD (p. 9, n. 11), a due process hearing request was initially filed July 25, 2006.  That request was subsequently withdrawn and a new request was not refiled until two months later – August 21, 2006.  While a hearing had been scheduled for October 23, 2006, the Plaintiffs asked for a delay (see Attachment 5), one that deferred the hearing to December 13, 2006 – nearly two months later. The hearing could not be concluded on December 13, and a January 22, 2007 date was selected because the Plaintiffs' witnesses were not available earlier.

After some nine months of administrative proceedings, much of the delay during which is attributable to the Plaintiffs, the Court is told that matters must be addressed immediately.  There is no equitable basis for demanding such haste here.

**C.      The balance of harms favors the Defendants**.

As to this element, the Plaintiff states simply that DCPS was given a chance to place the student, and having failed to meet within the time period for meeting  provided by the HOD, has effectively forfeited its right to complaint about the Court doing so. Motion, p. 14. The fact remains that, while a few days tardy, DCPS proposed meeting dates that could have obviated the current circumstance, but Plaintiffs refused to participate.

Moreover, IDEIA and related federal regulations specifically provide for the administrative procedures governing challenges to IEPs and placements, and for judicial

review of administrative Hearing Officer decisions. The Plaintiffs' urging a circumvention of those statutorily-prescribed processes indeed represents potential harm to DCPS and its ability to administer its special education programs, and does violence to the Congressionally-prescribed processes.

### D. Granting the requested injunctive relief would not be in the public interest.

In general terms, grant of the relief requested here would represent a major disruption of a carefully crafted legislative scheme for evaluating special education students, developing their IEPs, conducting an administrative review of disputed IEPs, and permitting judicial review thereafter. While IDEA provides procedures for the development of students' IEPs – and for unsatisfied parents' challenges to those IEPs, or for judicial review of administrative decisions in those respects – the Plaintiffs would have the Court disregard such statutory and regulatory prescriptions, and intervene during the middle of an administrative course they have affirmatively chosen. Such a course can only impair the orderly conduct of the adjudication procedures prescribed by Congress, and would not be in the public interest.

Moreover, in weighing the balance of interests here, it should be stressed that DCPS proposed to convene just the MDT/IEP meeting ordered by the February 5 HOD. While, regrettably, the date for such a meeting was later than that directed by the HOD, there is no indication whatever in this case that a brief delay in meeting caused the student any educational injury. Indeed, given that the conduct of a meeting would have concluded the IEP and placement issues earlier than the further administrative litigation that the Plaintiffs have demanded, no claim of injury as a result of the MDT/IEP meeting delay could be credited here.

## CONCLUSION

For the reasons set forth above, the Plaintiff has failed to satisfy the four-prong test justifying the grant of interim injunctive relief.  No imminent irreparable injury of any sort has been demonstrated.  And harm both to the Defendants and the public interest in the event of a grant of the requested relief are readily apparent.

The Plaintiff is entitled to no summary, Court-fashioned alternative to the statutory procedural scheme.  It is clear that the Plaintiffs have failed to exhaust their administrative remedies.  As a consequence, not only should the Motion be denied, but the Complaint herein should be summarily dismissed.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**March 6, 2007**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
**W.H., et al.,**                             )
                                              )
          **Plaintiffs,**                     )
                                              )
                    **v.**                    )   **Civ. No. 07-0435 (JR)**
                                              )
**DISTRICT OF COLUMBIA, et al.,**             )
                                              )
          **Defendant.**                      )
_____)

**ORDER**

Upon consideration of Plaintiffs' Motion for Temporary Restraining Order,

Defendants' Opposition thereto and the record herein, it is by the Court this _____

day of March, 2007,

      **ORDERED**: That Plaintiffs' Motion is DENIED; and it is

      **FURTHER ORDERED**: That the Complaint herein is DISMISSED with

prejudice.

      .


                                      _____
                                      UNITED STATES DISTRICT COURT JUDGE

(In the Matter of WH HOD: February 5, 2007)

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigation Division*
### CONFIDENTIAL
## Coles B. Ruff, Jr., Due Process Hearing Officer

| | |
|---|---|
| In the Matter of William Haislmaier ) <br> Date of Birth: November 23, 1998 ) <br> ("Student") ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> District of Columbia Public Schools ) <br> ("DCPS" or "District") ) <br> School: Non-Attending ) <br> Respondent. ) | **IMPARTIAL DUE PROCESS** <br> **REVISED** [1] <br> **HEARING OFFICER'S DECISION** <br><br> Hearing Dates: December 13, 2006 <br> January 22, 2007 <br> Held at: 825 North Capitol St. NE <br> Washington, DC |

Counsel for Student:                    Michael J. Eig, Esq.
                                        5454 Wisconsin Ave. #760
                                        Chevy Chase, Maryland  20815


Counsel for DCPS:                       Quinne Harris Lindsey, Esq.
                                        Office of General Counsel
                                        825 North Capitol St. NE
                                        Washington, DC  20002

## JURISDICATION:

A Due Process Hearing was convened on December 13, 2006, and concluded January 22, 2007, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a due process complaint submitted by counsel for the student and parent filed August 21, 2006. The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17 and the *Individuals with Disabilities Education Improvement Act of 2004* (I.D.E.I.A.), the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

## DUE PROCESS RIGHTS:

---

[1] This revised HOD is issued to include the provision directing DCPS to conduct an assistive technology evaluation.

(In the Matter of WH HOD: February 5, 2007)

The parent's counsel waived a formal reading of the due process rights.

## SUMMARY OF THE RELEVANT EVIDENCE:

The Hearing Officer considered the representations made on the record by each counsel, the testimony of the witness(es) and the documents submitted in the parties' disclosures (WH 1-27 and DCPS 1-22) which were admitted into the record.

## FINDINGS OF FACT [2]:

1. The student is currently age eight and has been determined to be eligible for special education and related services with a disability classification of multiple disabilities (MD) with classifications of learning disabled (LD) and other health impaired (OHI). The student's home school is Brent Elementary (Brent). The student, however, attends a private school: St. Peters Inter-Parish (St. Peter's) where he has attended for at least the last two school years. (DCPS-L)

2. Dr. Stephen Mott, a pediatrician at Georgetown University Hospital, has diagnosed the student with Childhood Absence Epilepsy and concerns in the areas of attention, executive function, aggressive outbursts and oppositional behavior. (WH 2)

3. In December 2004 when the student was age six and in the kindergarten at St. Peters, his mother (parent) initiated the eligibility process by contacting the DCPS Central Assessment and Referral and Evaluations (CARE) Center. The parent indicated to DCPS the student's diagnosis and provided independent evaluations. DCPS developed a student evaluation plan (SEP), reviewed the independent evaluations and conducted a psycho-educational evaluation and social history. (DCPS-Q, S)

4. The parent provided DCPS an independent occupational therapy (OT) evaluation conducted in December 2004. The evaluation noted the student had strengths in fine motor coordination and manual dexterity and gross motor skills. The evaluation noted he had "significant difficulty with visual motor interaction (using a pencil to produce shapes and letters) visual motor control (accuracy/control with pencil), self regulation of attention, ocular motor skills (eye movements), trunk stability and balance, handwriting and process and modulation of sensory information." The evaluator recommended the student receive occupational therapy services once per week to address these areas. (WH 11)

---

[2] The evidence that is the source of the finding of fact is noted within a parenthesis following the finding.

5.  In March 2005 DCPS psychologist Ms. Janet Burns conducted the psycho-educational evaluation. As a part of her evaluation Ms. Burns reviewed Dr. Mott's report, the student's independent OT evaluation, observed the student at St. Peters and conducted her own assessments.[3] The assessments indicated the student's intellectual abilities were in the high average range and his academic achievement in Reading and Math in the low average range; his spoken language abilities were in the superior range. (DCPS-V)

6.  Ms. Burns noted in her evaluation the student's cognitive functioning was better expressed with the use of oral language and expressive and receptive language skills. She also noted with regard to tasks requiring written expression (visual-motor integration, handwriting, visual scanning and speed accuracy) the student had severe deficits. She concluded that based upon the student's psycho-educational profile and the occupational therapy evaluation the student had learning disabilities in the area of written expression. (DCPS-V)

7.  The independent OT evaluation was also reviewed by DCPS occupational therapists, including Ms. Richeelle Harvey. She recommended the student receive 45 minutes of direct OT services weekly. (DCPS-H, N)

8.  On March 14, 2005, Ms. Irene Adderley, the DCPS CARE Center case manager, conducted a classroom observation of the student at St. Peter's and spoke with his classroom teacher. Ms. Adderley observed the student was attentive, followed classroom rules and directions and participated in the class activities. She noted he did not show signs of over-activity or aggression, appeared to comprehend directions from the teacher, acted appropriately in the classroom setting and appeared to be learning and retaining information.  (DCPS-J)

9.  On April 13, 2005, DCPS made a referral for a neuro-psychological evaluation to be conducted based on the recommendation of the student's physician. (DCPS-M)

10. On April 21, 2005, the multi-discipline team (MDT) convened and determined the student eligible with the LD classification and developed the student's initial individualized educational program (IEP). The parent participated along with St. Peter's principal and the student's classroom teacher at St. Peter's. The DCPS participants included Ms. Janet Burns, DCPS psychologist, and Ms. Vicia Banner the special educator and IEP developer.  (DCPS-L)

11. The initial IEP prescribed 5 hours of specialized instruction and OT consultative services.[4] The IEP included motor skill goals and academic goals and short term

---

[3] Ms. Burns administered the Wechsler Primary-Preschool Scale of Intelligence-Third edition (WPPSI-III), the Berry-Buktenica Developmental Test of Visual-Motor Integration (VMI) and Young Children's Achievement Test (YCAT).

[4] The IEP also noted the student was receiving OT services outside school at the parent's expense.

objectives. The IEP indicated the student was in need of specialized instruction in reading and handwriting and that his special education services could be provided in a combination general education and special education setting and this "combination setting" was the least restrictive environment (LRE) for the student. The IEP noted the student would benefit from regular education in all other areas due to his academic strengths. (DCPS-L)

12. DCPS was prepared to and offered to implement the student's IEP and provide him special education and related services at his neighborhood school, Brent. However, the parent indicated the student would not be attending Brent at that time. The MDT concluded the student was in need of direct OT services. However, because the parent indicated the student would not attend Brent the IEP reflected only consultative services as DCPS was not allowed by the rules of the Catholic Arch Diocese to provide direct services to the students at St. Peters. Had the student attended Brent he would have been provided direct OT services and the IEP would have reflected those direct services. The parent did not request that the student be allowed to come to Brent to be provided the OT services. (Ms. Adderley's testimony)

13. After the student was determined eligible DCPS conducted a neuropsychological evaluation of the student on May 18, 2005. The evaluator indicated that because of the student's attention deficits he would benefit from small group instruction in basic skills, including writing. It does not appear the evaluation was reviewed by a MDT. (DCPS-K)

14. In February 2006 the parent obtained a developmental cognitive neurology evaluation conducted by Martha Bridege Denckla, M.D. Dr. Denckla recommended the student be given a disability classification of "multiply handicapped" due to the "multiple modules of brain dysfunction he exhibits in addition to having the seizure disorder..." She recommended the student have "the most sophisticated special education program available for the next two years." (DCPS-G)

15. In March and April 2006 Dr. Patricia Papero, a Pediatric Neuro-psychologist, conducted another independent neuropsychological evaluation of the student. She diagnosed the student with Dyslexia, Graphomotor Output Disorder and Attention Deficit Hyperactivity Disorder (ADHD). Dr. Papero indicated the student "works extremely slowly and will have significant difficulty in written output to complete academic tasks." She noted that it is not feasible to mainstream the student in a general education curriculum as he needs a full time special education placement. She believes the student also suffers with a language disorder. (Dr. Papero's testimony, WH 6)

16. Dr. Papero recommended, based on the student's conditions, that he be in an education placement with a low student/teacher ratio, he not be pulled out of a regular education program to resource room but be in a full time special education

placement. She noted "the severity of [the student's] learning disability must not be understated in planning for the level of services...less than a full time special education placement would do harm through negligence in addressing the range and extent of deficiencies that directly affect learning at this stage in his educational development." (WH 6)

17. On May 22, 2006, DCPS convened a MDT meeting at St. Peters to address the parent's concerns that the student was not making sufficient progress at St. Peters. The parent presented DCPS with the independent re-evaluations that had been conducted and the parent requested DCPS conduct a speech language evaluation. DCPS agreed to conduct the speech/language evaluation, review the new independent evaluations and reconvene the MDT meeting. (DCPS-D)

18. On May 26, 2006, DCPS conducted a speech language evaluation which did not recommend the student receive speech language services. (DCPS-C)

19. On May 30, 2006, Ms. Burns conducted a review of the student's updated neuropsychological evaluation, developmental cognitive neurology evaluation, and conducted an academic reevaluation.[5] Ms. Burns had also conducted another observation of the student at St. Peters in February 2006. She concluded that based upon her evaluation and her review of the additional independent evaluations the student continued to meet the criteria for the LD classification and, based on the medical documentation supporting the existence of Attention Deficit and Hyperactivity Disorder (ADHD), warranted a classification of Multiply Handicapped." (DCPS-E)

20. The student has received private occupational therapy (OT) services once per week from Skills on the Hill, LLC since December 2004. Since October 2005 the student has received an additional hour of OT services in the school setting. An independent occupation re-evaluation was conducted in February 2006 which indicated the student had made improvements. The DCPS OT therapist reviewed the re-evaluation and concurred with the recommendation the student continued to need weekly occupational therapy services. (DCPS-H, I)

21. On June 5 2006, DCPS reconvened the MDT to revise the student's IEP based on the updated evaluations that had been conducted. The MDT participants included the parent, Ms. Irene Adderley, the DCPS occupational therapist, Ms. Wanda Banks, Ms. Janet Burns, St. Peter's principal, the student's teacher and Ms. Banner the special educator and IEP developer. (DCPS-D)

22. At the June 5, 2006, MDT meeting the student's disability classification was changed to multiply disabled – LD and other heath impaired (OHI). Each of the DCPS discipline evaluators reported the results of their evaluations and/or

---

[5] Ms. Burns conducted the following assessments: Woodcock Johnson III – Tests of Achievement, Written Expression Scale-Oral and Written Language Scales (OWLS)

reviews of the independent evaluations.  The parent expressed views about the student educational abilities.  The MDT increased the student's specialized instruction to 10 hours per week and added direct OT services of 1 hour per week and 30 minutes of counseling.  The IEP indicated the student would be out of general education 35% of the time.  (DCPS-B)

23. DCPS offered Brent as the location where the IEP could be implemented and the student could attend.  DCPS also offered Watkins Elementary School.  The parent indicated she would visit both locations.  There was no request or suggestions made by any of the MDT participants including the parent and the student's teacher that the student be placed in a full time special education placement. (Ms. Adderley's testimony, DCPS-B)

24. On June 8, 2006, a follow up meeting was convened with the parent, Ms. Adderley and the DCPS OT therapist, Ms. Wanda Banks.  Ms. Janet Burns participated by telephone.  The meeting was for the purpose of discussing additional OT concerns.  DCPS agreed to conduct an assistive technology evaluation.  Ms. Burns explained the social emotional goals for the student.  DCPS also offered to provide the student extended school year (ESY) services for summer 2006 and discussed the student's transportation needs to attend Brent.  The parent indicated she would consider the options and make a decision about the transportation and placement.  (DCPS-A)

25. On June 8, 2006, DCPS issued a prior notice of placement for the student to be in a combination special education/general education setting located at Brent. (DCPS-A)

26. The parent did not enroll the student at Brent at the start of school year (SY) 2006-07 and continued the student's attendance at St. Peters.  The services in the IEP are not being implemented at St. Peters as it is a general education school.  The parent's counsel filed the current due process complaint August 21, 2006. (WH 1)

27. Ms. Michele Davis is an educational consultant engaged by the parent during summer 2006 to assist the parent in determining an appropriate placement for the student.  Ms. Davis reviewed the student's evaluations and other data and observed the student at St. Peters on September 14, 2006.  She spent approximately 45 minutes at St. Peters.  She had no conversations with the student's tutor or the special education teacher and has not conducted any formal evaluation of the student.  (Ms. Davis' testimony)[6]

---

[6] The parent's counsel sought to have Ms. Davis designated as an expert in special education.  The Hearing Officer indicated this designation was too broad for expert designation.  However, based on her experience the Hearing Officer agreed to consider her opinion of the appropriateness of the student's IEP and the proposed placement.

(In the Matter of WH HOD; February 5, 2007)

28. At St. Peters the student is currently in a classroom with about 25 second graders with a teacher and an aide sitting in quads.  It is a general education curriculum. The student currently receives pull out services with a special education teacher/tutor in addition to the classroom instruction. Ms. Davis observed that the student is not a behavior problem and he is trying to be productive and is motivated in the classroom.  However, his skills seem to be regressing and he is showing deficiencies in all five areas of reading. (Ms. Davis' testimony

29. During Ms. Davis' observation the student had difficulty paying attention and remaining on task and was preoccupied with objects that did not have to do with the instruction being presented.  The student's responses to the teacher were not always understandable and he had difficulties with transitions.  As a result her observations, review of the student's evaluations and records and conversations with his evaluators and teacher, Ms. Davis concluded that pull out services were insufficient to meet the student's needs and that he could not be mainstreamed or benefit from services in an inclusion settings due to the severity of disabilities. (Ms. Davis' testimony, WH 4)

30. Ms. Davis also reviewed the IEP developed by DCPS on June 5, 2006.  She concluded the IEP was deficient and did not fully address the student's needs. The reading goals are appropriate but there is no base line in the current levels of performance from which a teacher can measure the student's progress relative to his goals and objectives.  The impact statement of his strengths is not a match for the goals and objectives that were developed in the IEP.  There are no written language goals and objectives mentioned in the IEP despite the fact the student is greatly impacted by his disability in the area of written expression.  There was also is no indication the student's executive functioning concerns are addressed. There are no supplementary aides in the IEP other than testing.  (Ms. Davis' testimony)

31. Ms. Davis observed Brent and the program proposed by DCPS for the student. She visited the second grade classroom which had 18 students and one teacher. Brent has only has one special educator with 12 special education students ranging in grades from Pre-K to 6th grade.  The special education services are delivered in an inclusion method with the special education teacher coming into the general education classroom to assist students.  The special education teacher pulls special education students out for small group work on an "as needed" basis. Ms. Davis concluded that the inclusion method used at Brent was inappropriate for the student and would even be detrimental to the student given the severity of his disabilities and the recommendations of his independent evaluators. (WH 5, Ms. Davis' testimony)

32. The student has been accepted by Kingsbury Day School (KDS).  KDS is a full time special education placement with a total of 80 students in 11 classrooms in its lower school, which is being offered to the student.  The classrooms average two adults to every four children.  The instruction is individualized to meet the

student's needs and the curriculum is integrated to experience the content areas through a variety of venues. The reading and writing methodologies are used to meet the student's needs. There are related service providers and the services are integrated in the classroom. The lower school has two program based counselors who provide consultative support to the classroom teachers and provide services to the students. There are two full time reading specialists assigned to the lower school who develop reading profiles and provide consultative services to the students. (Ms. Gustafson's testimony)

33. KDS can provide the student education, accommodations, and services that are recommended in his evaluations. A classroom has been identified for the student with a certified special education teacher and aide. KDS believes the student would require intensive intervention for three or four years then moving into a less restrictive or general education program. (Ms. Gustafson's testimony)

**ISSUE(S):** [7]

Did DCPS deny the student FAPE by:

1. Failing to evaluate the student in all areas of suspected disability? The parent alleges DCPS should have conducted an assistive technology evaluation in April 2005 prior the student's first IEP being developed. [8]

2. Failing to provide the student an appropriate IEP? The parent alleges the student's June 5, 2006, IEP is inappropriate because (a) it was not based on the recommendations made in the independent evaluations the parent provided, (b) the present levels of performance in the IEP are inadequate, and (c) the services prescribed are inadequate and the goals and objectives are inadequate.

3. Failing to provide the student an appropriate placement for SY 2006-07? The parent alleges Brent is an inappropriate placement for the student.

4. Failing to provide the student related services, specifically direct occupational therapy services from September 2005? [9]

---

[7] The alleged violation(s) and/or issue(s) raised in the complaint may or may/not directly correspond to the issue(s) outlined here. However, the issue(s) listed here were reviewed during the hearing and clarified and agreed to by the parties as the issue(s) to be adjudicated.

[8] The parent's counsel initially alleged DCPS did not conduct an OT evaluation. However, the parent presented an independent OT evaluation in 2005. The Hearing Officer indicated on the record that there is no claim by the parent the OT evaluations are insufficient; rather, the parent was asserting DCPS did not consider the independent evaluations in developing the IEP.

[9] The parent's counsel alleged DCPS should have provided the student equitable OT services although the parent chose for the student to not attend a DCPS public school after he was found eligible.

(In the Matter of WH HOD: February 5, 2007)

## CONCLUSIONS OF LAW:

Pursuant to IDEIA Sec. 1415 (f)(3)(E)(i) a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education (FAPE).

Pursuant to IDEIA § 1415 (f)(3)(E)(ii) in matters alleging a procedural violation a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to FAPE, significantly impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE, or caused the child a deprivation of educational benefits.

Pursuant to 5 DCMR 3030.3 the burden of proof is the responsibility of the party seeking relief.[10] In this case the parent is seeking relief and has the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.[11]

1. Did DCPS deny the student FAPE by failing to evaluate the student in all areas of suspected disability?  Conclusion:  The parent's counsel did not sustain the burden proof.

There was evidence that DCPS agreed to conduct an assistive technology evaluation at the June 8, 2006, MDT meeting.  Although the parent alleges DCPS should have conducted an assistive technology evaluation in April 2005 prior the student's first IEP being developed, there was no evidence that evaluation was suggested or requested prior to that meeting.  There was nothing presented to indicate that the evaluation has been conducted.  However, there was also no evidence that DCPS in not yet conducting this evaluation has impeded the student's right to FAPE or caused the student a deprivation of educational benefits.  However, the Hearing Officer directs in the Order below that DCPS, with the parent's consent, conduct the evaluation.

2.  Did DCPS deny the student FAPE by failing to provide the student an appropriate IEP?  Conclusion:  The parent's counsel sustained the burden of proof.

---

[10] Based solely upon the evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

[11] The parent's counsel asserted an identical complaint was filed July 25, 2006, and because of a delay in scheduling a new hearing date after a request for continuance, he withdrew the initial complaint and re-filed the complaint on August 21, 2006.  The Hearing Officer concluded that despite the fact that the complaints may have been identical because the current complaint was filed after the burden of proof provision was amended the burden of proof in this adjudication is upon the parent.

*(In the Matter of WH HOD: February 5, 2007)*

There was sufficient evidence presented that the IEP developed did not fully incorporate the recommendations made in the independent evaluations the parent provided, particularly with regard for the need for the student to be in a full time special education placement. In addition, the IEP does not contain sufficient present levels of performance from which a baseline of performance can be determined to measure the student's progress relative to his goals and objectives. Therefore, the Hearing Officer concludes the latest IEP developed does not fully address the student needs and is inappropriate.

3. Did DCPS deny the student FAPE by failing to provide the student an appropriate placement for SY 2006-07? Conclusion: The parent's counsel sustained the burden of proof.

There was sufficient evidence based on the student's independent evaluations and the testimony of Dr. Papero and Ms. Davis that the student is in need of a full time special education placement and that services provided to the student in an inclusion method as would be provided to him at Brent would be detrimental.

The parent has proposed the student be placed at KDS and there is sufficient evidence KDS can provide the student educational benefit. However, the Hearing Officer notes that although the student's independent evaluations indicated the severity of the student's deficits and that he was in need of a full time special education placement when the student IEP was developed on June 5, 2006, there was no member of the MDT who asserted the student was in need of a full time placement.

The Hearing Officer notes the MDT meeting was held and St. Peters and the student's teacher participated in the meeting. There is no indication that parent or the St. Peters staff disagreed at that meeting with the determination that the student could continue to receive services as he was then being provided at St. Stephens.

The Hearing Officer takes administrative notice that a MDT does not always follow the recommendations in an evaluation particularly when the evaluators making those recommendations are not members of the MDT and the MDT members consider other variables related to the student's educational performance and needs. It was not unreasonable at the time of the MDT meeting for DCPS to conclude the student could remain in the a similar inclusion setting as the student had been in for the past two years, particularly when there was no member of the team advocating for any other type of services and/or placement.

Now after a formal presentation of the independent evaluations in the hearing by a principal evaluator and classroom observations by Ms. Davis, the Hearing Officer is convinced that the unique needs of this student warrant and full time special education placement.

Pursuant to DC Code § 38-2501(c) DCPS is required to consider the placement options for a student in the following order (1) DCPS schools or District of Columbia public

(In the Matter of WH HOD: February 5, 2007)

charter schools; (2) Private or residential District of Columbia facilities; and (3) Facilities outside of the District of Columbia.[12]

Given that the student is in need of a full time special education placement DCPS should be given the opportunity to comply with that provision and consider and/or offer a full time public education placement and to consider the placement proposed by the parent. The Hearing Officer concludes DCPS has not been given a full opportunity to do so.

Therefore, rather than at this juncture place the student at KDS the Hearing Officer will direct DCPS to immediately convene a MDT/IEP placement meeting to amend the student's IEP to reflect the need of a full time special education placement, for the parent to be able to present the full cadre of individuals familiar with the needs of the student and determine an appropriate placement for the student as he has yet to have a full time IEP.  Just as the independent evaluators and consultants participated in the hearing they could presumably participate in a MDT/IEP/Placement meeting.

The Hearing Officer is mindful that the KDS placement may not be available long and it is imperative that the student be offered an appropriate placement promptly.  If DCPS does not promptly comply with this Order or if the parent is not satisfied with the placement offered the parent may request an expedited hearing to challenge the placement offered or any other procedural and/or substantive violation.

4.  Did DCPS deny the student FAPE by failing to provide the student related services, specifically direct occupational therapy services from September 2005?  Conclusion: The parent's counsel did not sustain the burden of proof.   I

Ms. Adderley credibly testified that DCPS agreed the student was in need of direct OT services and would have provided those services had the student attended Brent after the student was determined eligible.   It appears the parent requested the student be provided services at St. Peters but Ms. Adderley indicated those services could not be provided to the student at St. Peters because of the restrictions imposed by St. Peters.  There was no evidence to refute this testimony.

**ORDER:**

1.  DCPS shall, within ten (10) school days of the issuance of this Order, convene a multi-disciplinary team/individualized educational program (MDT/IEP) meeting to review the student's evaluations, review and revise the student's IEP to consider the appropriateness of a full time special education placement, discuss and determine placement and to allow the parent and the student's independent

---

[12] D.C. Code § 38-2501 (2003):  (c) Special education placements shall be made in the following order of priority provided that the placement is appropriate for the student:
  (1) DCPS schools or District of Columbia public charter schools;
  (2) Private or residential District of Columbia facilities; and
  (3) Facilities outside of the District of Columbia.

(In the Matter of WH HOD: February 5, 2007)

evaluators to provide relevant data and be members of the MDT. DCPS shall fully consider the placement option proposed by the parent.

2. DCPS shall issue a prior notice of placement within five (5) school days of the MDT/IEP meeting if the recommended placement is public and thirty (30) calendar days if the recommended placement is private.

3. DCPS shall, within, thirty (30) days of the issuance of this Order, and with the parent's consent, conduct an assistive technology evaluation of the student.

4. Scheduling of the MDT/IEP meeting is to be arranged through parent's counsel.

5. DCPS will be given a day for a day extension of any of the prescribed time frames in this Order for any delay caused by the student, the parent and/or their representative(s).

6. If DCPS does not promptly comply with this Order the parent may immediately petition the DCPS Student Hearing Office for an expedited hearing and relief.

**APPEAL PROCESS:**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

_____

**Coles B. Ruff, Esq.**
**Hearing Officer**
**Date: February 5, 2007**

Issued: 2/5/07

(In the Matter of WH HOD: February 5, 2007)

## In the MATTER OF William Haislmaier V. DCPS

### INDEX OF EXHIBITS

| EXHIBIT # | IDENTIFICATION | ADMITTED |
|-----------|----------------|----------|
| WH 1-27 | Parent's Disclosures | Yes |
| DCPS 1-22 | DCPS Disclosures | Yes |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | * A detailed list of the documents disclosed is contained in the parties' disclosure notices |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

(In the Matter of WH HOD: February 5, 2007)

# In the MATTER OF William Haislmaier V. DCPS

## RECORD OF PROCEEDING

| DATE | DESCRIPTION |
| --- | --- |
| 8/21/06 | Request for Due Process |
| | Notice of Pre-Hearing Conference (as applicable) |
| 9/25/06 | Notice of Due Process Hearing |
| | SETS Disposition Form |
| | Transcripts or audio tapes of hearing |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

(In the Matter of WH HOD: February 5, 2007)

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

# INDEX OF NAMES

## In the MATTER OF William Haislmaier V. DCPS

| | |
|---|---|
| Assistant Superintendent, Special Education (or Director) | |
| Special Education Coordinator | |
| DCPS School Psychologist | Ms. Janet R. Burns |
| Regular Education Teacher | |
| DCPS Case Manager | Ms. Irene Adderley |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| Child and Child's DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vs. child's name) | |
| Child's Parent(s) (specific relationship) | Ms. Helen C. Haislmaier (Mother) Mr. Edmond F. Haslmaier (Father) |
| Child/Parent's Representative | Michael J. Eig, Esq. |
| School System's Representative | Quinne Harris Lindsey, Esq. |
| Parent's Educational Consultant | Ms. Michelle R. Davis |
| | Ms. Jody Thoney |
| Kingsbury Day School | Ms. Marlene Gustafson |
| Private Psychologist | Dr. Patricia Papero |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**MICHAEL J. EIG AND ASSOCIATES, P.C.**
ATTORNEYS AT LAW
SUITE 760
5454 WISCONSIN AVENUE
CHEVY CHASE, MARYLAND 20815-6938

(301) 657-1740
FACSIMILE (301) 657-3843

FEB 2 2 2007

| | | | |
|---|---|---|---|
| Michael J. Eig | MD, DC | Paula A. Rosenstock | VA, DC |
| Haylie M. Iseman | MD, DC, NY | Patricia Cyr | CA, DC |

February 22, 2007

Hearing Officer Coles Ruff
c/o Sharon Newsome
Student Hearing Coordinator
District of Columbia Public Schools
Student Hearing Office
825 North Capitol Street, NE, 8th Floor
Washington, D.C. 20002

2007 FEB 27 PM 3: 02
OFFICE OF THE
GENERAL COUNSEL

Re: **William Alfred T. Haislmaier**
*via facsimile and first-class mail*

Dear Mr. Ruff:

As you know, on February 5, 2007 you issued a revised decision in the above-named student's case, finding that William is in need of a full-time special education placement. You ordered DCPS to convene an MDT/IEP meeting *within ten school days* to review and revise the IEP to consider the appropriateness of a full-time special education placement. As of today, nobody from DCPS has contacted my office (as you ordered them to do), or my clients, to schedule the MDT/IEP meeting.

In your decision, you state that if DCPS fails to comply with the order that the parents may immediately petition the DCPS Student Hearing Office for an expedited hearing and relief. While we are willing to attend an expedited hearing, we do not believe that a hearing is necessary. DCPS has failed to convene the MDT/IEP meeting as ordered and you have already found that "there is sufficient evidence KDS can provide the student educational benefit." We therefore request that you issue the requested relief – placement and funding of William Haislmaier at the Kingsbury Day School for the 2006-07 school year and retroactive reimbursement as compensatory education for William's private tutoring and occupational therapy.

Time continues to be of the essence here. Please let us know how you would like to proceed. Thank you.

Sincerely,

*Michael Eig /MAR*

Michael J. Eig

cc:    Quinne Harris Lindsey, Esq.
       Mr. and Mrs. Haislmaier

**MICHAEL J. EIG AND ASSOCIATES, P.C.**
ATTORNEYS AT LAW
SUITE 760
5454 WISCONSIN AVENUE
CHEVY CHASE, MARYLAND 20815-6938

(301) 657-1740
FACSIMILE (301) 657-3843

FEB 2 6 2007

| | | | |
|---|---|---|---|
| Michael J. Eig | MD, DC | Paula A. Rosenstock | VA, DC |
| Haylie M. Iseman | MD, DC, NY | Patricia Cyr | CA, DC |

February 26, 2007

Hearing Officer Coles Ruff
c/o Sharon Newsome
Student Hearing Coordinator
District of Columbia Public Schools
Student Hearing Office
825 North Capitol Street, NE, 8th Floor
Washington, D.C. 20002

**Re: William Alfred T. Haislmaier**
*via facsimile and first-class mail*

Dear Mr. Ruff:

We wrote to you on February 22, 2007, to advise that DCPS had failed to take any steps toward compliance with your Decision in William's case, and to further request that you place him forthwith at Kingsbury Day School. As you have recognized in your Decision, and as we emphasized in our letter, time is very much of the essence now and we need urgent action to protect William's rights. Accordingly, I am asking that you either issue a Decision in response to our communication by the close of business today, or conduct a status teleconference with counsel later today. Thank you.

Sincerely,

Michael J. Eig

cc:    Quinne Harris Lindsey, Esq.
       Mr. and Mrs. Haislmaier
       Marlene Gustafson

**EXHIBIT**

tabbies®

4

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



*X EXPEDITED HEARING*

### HEARING NOTICE

MEMORANDUM VIA: [ X ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO: Parent (or Representative): __M. EIG__    Fax No.: _____

LEA Legal Counsel: __Q. HARRIS-LINDSEY__

RE: __HAISLMAIER, WILLIAM__ and (LEA) DOB: _____
Student's Name

FROM: __SHARON NEWSOME__
Special Education Student Hearing Office Coordinator

DATE SENT: __2/28/07__

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on _____. Please be advised that the hearing has been scheduled for:

DATE: __3/13/07__

TIME: __9:00 AM__    *EXPEDITED HEARING*

AT: 825 North Capitol Street, NE, Washington, DC
8th Floor

ASSIGNED HEARING OFFICER: __RUFF__

[ ] **THIS IS A FINAL NOTICE OF HEARING:** If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[ X ] **THIS IS A PROVISIONAL NOTICE OF HEARING:** The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

**Failure** to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

**EXHIBIT**
6

MICHAEL J. EIG AND ASSOCIATES, P.C.
ATTORNEYS AT LAW
SUITE 760
5454 WISCONSIN AVENUE
CHEVY CHASE, MARYLAND 20815-6938
(301) 657-1740

FACSIMILE (301) 657-3843

October 23, 2006

Sharon Newsome
District of Columbia Public Schools
Student Hearing Office
825 North Capitol Street, NE, 8th Floor
Washington, D.C. 20002

Re: **William Alfred T. Haislmaier**
*via facsimile and first-class mail*

Dear Ms. Newsome:

This letter will confirm our telephone call on Friday, October 20, 2006, informing you that the hearing scheduled for today, October, 23, 2006, will not go forward due to a family funeral. I have notified opposing counsel. Thank you.

Sincerely,

Michael J. Eig

cc: Edmund and Helen Haislmaier
    Quinne Harris-Lindsey, Esq.